Elio BATTISTA and Neiva Battista,
his wife, Plaintiffs,

v.

CHRYSLER CORPORATION, a Delaware
Corporation, Defendant.

Superior Court of Delaware,
New Castle County.

Submitted Oct. 7, 1982.

Decided Oct. 22, 1982.

Robert P. Lobue and John T. Owens, Wilmington, for plaintiffs.

Richard Galperin of Flanzer & Isaacs, Wilmington, for defendant.

O'HARA, Judge.

The issue presented in this action is whether or not claims of defamation and intentional infliction of mental distress are solely within the ambit of the Delaware Workmen's Compensation Act, thus barring the common law actions filed in this Court by employee Elio Battista ("Employee") against employer Chrysler Corporation ("Chrysler"). In addition to refuting the merits of Employee's tort claims, Chrysler asserts that Employee's exclusive remedy lies in a claim under the Workmen's Compensation law. The Court agrees that such Act precludes a common law suit for intentional infliction of mental distress; however, a separate action in defamation will lie against an employer, the Workmen's Compensation statute notwithstanding.

█ In judging the merits of Chrysler's motion to dismiss for failure to state a claim, Superior Court Civil Rule 12(b)(6), all well-pleaded facts in the complaint are assumed to be true. *Laventhol, Krekstein, Horwath & Horwath v. Tuckman,* Del. Supr., 372 A.2d 168 (1976). A complaint will not be dismissed unless the plaintiff would not be entitled to recover under any reasonably conceivable set of circumstances susceptible of proof. *Diamond State Tel. Co. v. University of Delaware,* Del.Supr., 269 A.2d 52 (1970).

The complaint details the following facts: Employee entered Chrysler's employ on January 30, 1976, assuming the job classification of "Assembler-major." A month later he was promoted to the position of "Repairman-welder," a position he remained in until October, 1977, at which point he took an electrician position until his demotion back to the assembly line on October 24, 1977.

Following a grievance hearing in June, 1979, Employee was reinstated to the position of "Repairman-welder." However, he was again demoted to the "Assembler-major" classification in September, 1979. He voluntarily left Chrysler's employ a month later and was subsequently hospitalized suffering from fainting, chest pains, and various other ailments.

Employee's claims of intentional infliction of mental distress and defamation both arise from his allegedly wrongful demotion. With respect to the alleged defamation, he asserts that his supervisors orally, and via intra-corporate memoranda, falsely represented to other Chrysler personnel that he "did not and could not adequately perform the job of repairman-welder."

Chrysler argues that Employee's injuries are compensable under the Delaware Workmen's Compensation Act and that the statute provides the exclusive remedy. 19

*Del.C.* § 2304.[1] Chrysler asserts that Employee was in its employ at the time of his alleged injuries; that his injuries arose "out of and in the course of employment"; and that his injuries constitute a "personal injury" within the meaning of the Compensation Act.

■ The exclusivity provision of § 2304 bars common law actions against an employer where: 1) plaintiff is an employee; 2) his condition is shown to be a "personal injury" within the meaning of the statute; and 3) the injury is shown to have arisen out of and in the course of employment. 19 *Del.C.* § 2304. *See also* L. Locke, Workmen's Compensation, § 651 at 763 (1968). The presence of the first and third requisites being uncontroverted herein, consideration must be then given to the issue of whether the damage sustained by Employee constitutes a personal injury as contemplated by the statute.

Chrysler relies upon *Kofron v. Amoco Chemicals Corp.,* Del.Supr., 441 A.2d 226 (1982) for the proposition that the Workmen's Compensation Act insulates an employer from suit at common law for any tort. While the Court does not agree that the decision in *Kofron* bars *any* tort claim, it does find the Supreme Court's analysis therein appropriate to the instant case.

The plaintiffs in *Kofron* were industrial workers who contracted certain diseases as a result of overexposure to excessive levels of asbestos found in their working environments. Their claim against their employer arose from allegations that their employer,

among other things, concealed and affirmatively misrepresented the danger of working in close proximity to asbestos materials. In an attempt to circumvent the exclusivity provision of § 2304 and secure a remedy at common law, the plaintiffs characterized the employer's conduct as intentional and grossly negligent. However, the Superior Court granted the employer's motion to dismiss; its decision was upheld by our Supreme Court on appeal.

In dismissing the plaintiffs' claim in *Kofron,* the Supreme Court focused solely on the nature of the injury alleged and found that asbestosis was indeed an occupational disease as contemplated by the statute. 19 *Del.C.* §§ 2301(4) & (11),[2] 2304. The Court examined the legislative history of the term "personal injury" from its inception, noting that in 1937[3] the Legislature amended the statute to include specifically listed occupational diseases, 41 Del.Laws, c. 241 (1937), and eventually extended coverage under the statute to all occupational diseases. 47 Del.Laws, c. 270 (1949). In sum, the Court discerned a legislative intent in occupational disease cases to make the Workmen's Compensation law an exclusive remedy and to bar common law claims.

This injury-oriented analysis, coupled with the Court's summary rejection of the allegations of grossly negligent and intentional employer conduct, as bearing on the remedy, evidences an approach which is articulated in *Foley v. Polaroid Corp.,* Mass. Supr., 381 Mass. 545, 413 N.E.2d 711 (1980):

> [T]he key to whether the Workmen's Compensation Act precludes a common

---

1. 19 *Del.C.* § 2304. Compensation as exclusive remedy.

   Every employer and employee, adult and minor, except as expressly excluded in this chapter, shall be bound by this chapter respectively to pay and to accept compensation for personal injury or death by accident arising out of and in the course of employment, regardless of the question of negligence and to the exclusion of all other rights and remedies.

2. 19 *Del.C.* § 2301(4) defines compensable occupational disease to include "all occupational diseases arising out of and in the course of employment only when the exposure stated in

connection therewith has occurred during employment."

19 *Del.C.* § 2301(11) describes "injury" and "personal injury" as "violence to the physical structure of the body, such disease or infection as naturally results directly therefrom when reasonably treated ..."

3. Prior to 1937, only those injuries which naturally resulted from accidental physical violence to a bodily structure were covered under the statute. 29 Del.Laws, c. 233 (1917) Revised Code of Delaware 1935, ¶ 6114, § 44.

law right of action lies in the nature of the injury for which plaintiff makes claim, not the nature of the defendant's act which plaintiff alleges to have been responsible for that injury. 413 N.E.2d at 716, *citing Gambrell v. Kansas City Chiefs Football Club, Inc.,* Mo.App., 562 S.W.2d 163, 168 (1978).

Accordingly, the Court will consider Employee's claims of intentional infliction of mental distress and defamation respectively, applying the *Kofron-Foley* analysis.[4]

■ With respect to Employee's allegation of intentional infliction of mental distress, the Court finds that the claim precipitated by Employee's allegedly wrongful demotion falls within the exclusive province of the Workmen's Compensation law. Focusing on the nature of the injury, one concludes that mental harm is the essence as well as an indispensable element of the tort. Another case similarly involving claims of intentional infliction of mental distress and defamation, *Foley v. Polaroid Corp.,* supra, determined with respect to the former charge:

> We conclude that Foley's severe emotional distress resulting from the defendant's conduct relative to the charges of rape and assault is compensable under the act [Workmen's Compensation] as a "personal injury arising out of and in the course of . . . employment." 413 N.E.2d 711 at 715.

This conclusion gains support in our own jurisdiction from *Ramey v. Delaware Materials, Inc.,* Del.Supr., 399 A.2d 205 (1979), holding that mental trauma is compensable under the Workmen's Compensation Act. *See also Fiorucci v. C.F. Braun & Co.,* Del. Super., 173 A.2d 635 (1961). Therefore, no action for intentional infliction of mental

distress may be maintained and the motion to dismiss is granted with respect to this claim.

■ Turning to the defamation claim, the harm flowing therefrom is not a "personal injury" within the purview of the Workmen's Compensation law. In fact, an injury to reputation affects a proprietary interest and as such is not a personal injury at all, any concommitant physical or mental injury notwithstanding.

Other jurisdictions have recognized that not all harms occasioned by the employment relationship qualify as compensable injuries under the Act. Such harm includes: injuries to reputation resulting from libel, malicious prosecution and false imprisonment, invasion of privacy, and false arrest. *Foley v. Polaroid Corp.,* 413 N.E.2d at 715 *citing Madden's Case,* Mass.Supr., 222 Mass. 487, 111 N.E. 379, 381 (1916).

In sum, there is no relation between the kind of injuries envisioned by the Workmen's Compensation law and the injury alleged here. Workmen's Compensation encompasses physical and mental injuries arising out of employment, whereas the gravamen of a defamation action is injury to reputation, irrespective of any physical or mental harm. *See* Annot., "Workmen's Compensation Provision as Precluding Employee's Action against Employer for Fraud, False Imprisonment, Defamation or the Like," 46 A.L.R.3d 1279 (1972). *See also Braman v. Walthall,* Ark.Supr., 215 Ark. 582, 225 S.W.2d 342 (1949) (employee's action for defamation); *Moore v. Federal Dept. Stores,* Mich.App., 33 Mich.App. 556, 190 N.W.2d 262 (1971) (employee's action for false imprisonment).

Moreover, in the absence of any accompanying physical or mental damage, the inap-

---

4. Defendant also relies on *Diamond State Tel. Co. v. University of Delaware,* Del.Supr., 269 A.2d 52 (1970), to preclude any common law right of action against an employer. Initially, this Court observes that the injury involved therein, the electrocution of a telephone company employee while installing cable, was unequivocally the kind of compensable occupa-

tional injury contemplated by the Workmen's Compensation statute. Moreover, a careful reading of *Diamond State Tel. Co.* reveals that the *payment* of compensation, rather than the mere existence of the statutory remedy, barred a common law action against the employer, thus distinguishing it from the instant case.

propriateness of the Workmen's Compensation remedy becomes even clearer. As in the instant case, however, the *Foley* Court was confronted with allegations of physical and mental injury which seemingly overshadowed any injury to reputation. The Court concluded:

> [T]o block the main thrust of this action because of peripheral items of damage, when a compensation claim could not purport to give relief for the main wrong of injury to reputation, would be congruous, and outside the obvious intent of the exclusiveness clause. 413 N.E.2d at 715.

Therefore, persuaded by the rationale in *Foley v. Polaroid Corp.*, supra, and satisfied that it is indeed consistent with the analysis in *Kofron v. Amoco Chemicals Corp.*, supra, this Court finds that § 2304, the exclusivity provision of the Workmen's Compensation Act, does not preclude the assertion of a common law action in defamation against an employer.[5]

Turning now to the merits of Employee's defamation complaint and Chrysler's motion to dismiss for failure to state a claim, the Court first notes that Employee has brought this action against Chrysler on the basis of statements allegedly made by his superiors to the effect that he could not perform the job of Repairman-welder because he lacked electrical skills. Chrysler, in moving to dismiss for failure to state a claim, has introduced documents outside the pleadings, thus turning the motion into one for summary judgment under Superior Court Civil Rule 56. *Jones v. Julian*, Del. Super., 188 A.2d 521 (1963); *Brown v. Colo-*

*nial Chevrolet Company*, Del.Super., 249 A.2d 439 (1968).

■ On a motion for summary judgment, the Court's function is to examine the record and determine whether there is a genuine issue of fact. *National Fire Co. v. Eastern Shore Lab., Inc.*, Del.Super., 301 A.2d 526 (1973). In examining the record, the Court must view the facts in a light most favorable to the nonmoving party; however, uncontroverted evidence offered in support of a motion for summary judgment must be accepted as true. *Matas v. Green*, Del.Super., 171 A.2d 916 (1961); *Frank C. Sparks Co. v. Huber Baking Co.*, Del.Supr., 96 A.2d 456 (1953). Applying these legal principles, the Court finds that Chrysler is entitled to judgment against Employee.

■ The defamatory matter in question falls into one of four categories of defamation which are actionable *per se*, without proof of special damages. Generally speaking, these are statements which: 1) malign one in a trade, business, or profession; 2) impute a crime; 3) imply that one has a loathsome disease; or 4) impute unchastity to a woman. *Spence v. Funk*, Del.Supr., 396 A.2d 967 (1978).

Unquestionably, the remark that Employee lacked the electrical skills necessary to his trade is within the ambit of the first category. However, not all defamation is actionable. The law cloaks certain classes of communication with a privilege which insulates such communications from recovery of damages. In the instant case, Chrysler claims the benefit of conditional or qualified privilege[6] extending to communica-

---

5. Nothing said herein is intended as support for a theory of double recovery, both under the Workmen's Compensation Act and in an action at law.

6. Employee attempts to thwart Chrysler's defense of qualified privilege by citing *Klein v. Sunbeam Corp.*, Del.Supr., 94 A.2d 385 (1952) to the effect that a question of qualified privilege may not be raised by motion to dismiss under Rule 12(b)(6) but should be made a matter of answer to be supported by proof at trial. The motion at bar introduces material outside the pleadings and is thus transformed into a

motion for summary judgment under Rule 56. *Jones v. Julian*, Del.Super., 188 A.2d 521 (1963). Therefore, *Klein* does not extinguish the defense of qualified privilege. Moreover, the Court in *Klein* found material issues of fact attached to defendant's assertion of the privilege. However, in the instant case the facts giving rise to assertion of the privilege stand uncontroverted. Inasmuch as the complaint is fatally defective in failing to allege any facts to defeat said privilege, the Court declines to bar a valid defense for the sake of slavish adherence to rules of procedure.

tions made between persons sharing a common interest for the protection of which the allegedly defamatory statements are made. *Pierce v. Burns,* Del.Supr., 185 A.2d 477 (1962); Prosser on Torts (2d Ed.), § 95; Restatement of Torts, § 593. This qualified privilege is particularly germane to the employer-employee relationship and has been recognized as such by the Delaware Supreme Court. See *Pierce v. Burns,* supra; *Burr v. Atlantic Aviation Corporation,* Del.Supr., 348 A.2d 179 (1975). Employee admits that the defamatory remarks concerned only his ability to perform his job. Thus, under the undisputed facts in this case, the statements made by Chrysler clearly qualify for the conditional privilege extended to the employment relationship.

▋ Nonetheless, the benefit of conditional privilege may be forfeited if it is abused 1) by excessive or improper publication, 2) by the use of the occasion for a purpose not embraced within the privilege, or 3) by making a statement which the speaker knows is false. *Pierce v. Burns,* supra. Moreover, a qualified privilege must be exercised in good faith and without malice. *Snavely v. Booth,* Del.Super., 176 A. 649 (1935); *Short v. News-Journal Company,* Del.Super., 205 A.2d 6 (1965).

▋ A finding of conditional privilege conditionally negates the presumption of malice and shifts the burden to the plaintiff to show actual malice. Absent a finding of express malice, the privilege, if not abused, defeats the action. *Hanrahan v. Kelly,* Md.Ct. of App., 269 Md. 21, 305 A.2d 151 (1973). The question of whether a conditional privilege has been abused by malice or intent to harm ordinarily is a factual question for the jury, *Pierce v. Burns,* supra; Restatement of Torts, § 619, unless, of course, the evidence when considered in a light most favorable to plaintiff is insufficient to raise a factual question upon which reasonable men might differ. *Ebersole v. Lowengrub,* Del.Supr., 180 A.2d 467 (1962). In the absence of any factual dispute raised

in the instant case, the Court must apply the law to the allegations herein.

With regard to abuse of qualified privilege by excessive or improper publication, Employee concedes that the comments were confined to Chrysler personnel. The remarks in issue only concerned Employee's job performance and, as he admits, were made only by those "acting within the scope of their employment and on behalf of defendant [Chrysler]." Thus, Employee cannot complain that the communication served a purpose not embraced within the privilege. Although he contends that Chrysler knew or should have known that the statements uttered were false, no facts are offered to support the allegation. In sum, there is no evidence whatsoever that Chrysler abused its qualified privilege and, in fact, Employee's own allegations support the existence of said privilege.

As for Employee's burden of persuasion concerning the existence of actual malice, the Court finds *Coleman v. Newark Morning Ledger Co.,* N.J.Supr., 29 N.J. 357, 149 A.2d 193 (1959) of great assistance in evaluating the case *sub judice.* In distinguishing the term "actual malice" from the legal concept of malice, the *Coleman* Court noted that while something less than spite, ill will or a desire to do harm may satisfy actual malice, a qualified privilege once established, by the occasion and proper purpose, is not forfeited by the mere addition of the fact that a defendant feels indignation and resentment towards the plaintiff and enjoys making such statements. 149 A.2d at 202. More specifically, the Court in *Sokolay v. Edlin,* N.J.Super., 65 N.J.Super. 112, 167 A.2d 211 (1961) articulated a plaintiff's burden as a showing that the statements were made primarily to further interests other than those protected by the qualified privilege and that the chief motive for making such statements was the defendant's ill will.

▋ In applying the above mentioned legal standards, the Court finds Employee's complaint totally devoid of any allegations

which would defeat the privilege and that no reasonable person could conclude that Chrysler made the statements in issue with actual malice toward Employee. Therefore, although the Court holds that a common law action in defamation will lie against an employer and is not barred by the Workmen's Compensation Act, the Court finds that Employee's allegations are defeated as a matter of law by the existence of qualified privilege. Accordingly, judgment must be entered against Employee in this matter and the motion to dismiss is hereby granted.

In light of the foregoing disposition of the instant case, the Court need not consider the issue of whether the agreement between Chrysler and the United Auto Workers barred Employee's suit against Chrysler.

IT IS SO ORDERED.