**In re Melissa Lyn Peterson ADAMS, Debtor.**

**Dirk S. Adams, Plaintiff,**

**v.**

**Melissa Lyn Peterson Adams, Defendant.**

**Bankruptcy No. 11–86523–MGD.**
**Adversary No. 12–05198–MGD.**

United States Bankruptcy Court,
N.D. Georgia,
Atlanta Division.

July 19, 2012.

---

Dirk S. Adams, Atlanta, GA, pro se.

Howard P. Slomka, Slomka Law Firm, Atlanta, GA, for Defendant.

### *ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS*

MARY GRACE DIEHL, Bankruptcy Judge.

The Court must decide in this adversary proceeding whether the Plaintiff's complaint should be dismissed for failure to state a claim upon which relief can be granted. This matter is before the Court on the Motion to Dismiss filed by Melissa Lyn Peterson Adams ("Defendant"). (Docket No. 5). Dirk S. Adams ("Plaintiff") initiated this adversary proceeding by filing a Complaint to Determine Dischargeability of Debt ("Complaint") under 11 U.S.C. § 1328(a)(4). (Complaint, Docket No. 1). Section 1328(a)(4) excepts from discharge any debt "for restitution, or damages, awarded in a civil action against the debtor as a result of willful or malicious injury by the debtor that caused personal injury to an individual or the death of an individual." 11 U.S.C. § 1328(a)(4). Referencing two state-court tort actions pending against Defendant, Plaintiff alleges that Defendant is liable for damages resulting from personal injury to Plaintiff, as defined by § 1328(a)(4). (*Id.* at ¶¶ 40–41; 44–45).

In her Motion to Dismiss ("Motion"), Defendant argues that Plaintiff's Complaint should be dismissed under Federal Rule of Civil Procedure 12(b)(6) because Plaintiff has failed to state a claim upon which relief can be granted. Defendant's principal argument is that the injuries alleged in the Complaint do not meet the definition of personal injury under

§ 1328(a)(4). Further, Defendant argues that § 1328(a)(4) is inapplicable because (1) the damages were not awarded before Defendant's bankruptcy petition was filed, and (2) Defendant's conduct was neither willful nor malicious. For the reasons stated below, the Court grants in part and denies in part Defendant's Motion.

## I. STATEMENT OF FACTS

Plaintiff's Complaint alleges the following material facts to show that an award for damages against Defendant in the pending state-court actions should be excepted from discharge under 11 U.S.C. § 1328(a)(4). Plaintiff is the President and Chief Executive Officer of Home Savings of America ("Home Savings").[1] (Complaint ¶ 9). Defendant made false and malicious statements—intended to damage Plaintiff's reputation—to members of the Board of Directors of Home Savings ("Home Savings Board"); to the Advisory Director of Home Savings; and to other key management-level employees, directors, and shareholders of Home Savings. (*Id.* at ¶ 11).

The complaint states several specific instances of allegedly tortious conduct, including the following. First, in a 2009 statement, Defendant contacted each member of the Home Savings Board and made defamatory statements about Plaintiff, calling into question his ability to lead the company. (*Id.* at ¶ 14). Second, in July 2009, Defendant telephonically threatened to murder the Vice President of Home Savings as well as her children. (*Id.* at ¶ 15). Third, also in July 2009, Defendant, while in California on business, threatened to castrate and kill Plaintiff. (*Id.* at ¶ 16). Fourth, in November 2009,

Defendant called the Advisory Director of Home Savings and threatened Plaintiff and the company. (*Id.* at ¶ 17). Fifth, in early 2011, Defendant intentionally disrupted a business deal between Home Savings and Guggenheim Partners, L.L.C. ("Guggenheim") by defaming Plaintiff to one of Guggenheim's principals. (*Id.* at ¶ 18). Sixth, in March 2011, Defendant sent a text message to the Advisory Director and three other key Home Savings employees. (*Id.* at ¶ 19). The text message stated: "[p]lease be aware that federal charges will be brought against [Plaintiff] this week. The continuous harassment, stalking, and now further financial fraud has got to stop. I hope the bank can survive this bad publicity." (*Id.*). Seventh, Defendant filed false and malicious complaints with government agencies to tarnish Plaintiff's reputation. (*Id.* at ¶ 22). These reports included a complaint to the United States Post Office, alleging Plaintiff was intercepting Defendant's mail; a report to the Federal Trade Commission, alleging that Plaintiff was accessing Defendant's online accounts; and a police report, alleging that Plaintiff posted inappropriate pictures of Defendant on an adult website. (*Id.*). Finally, the Complaint alleges that Defendant continues to accuse Plaintiff of "cloning" her cell phone and unlawfully accessing her bank accounts. (*Id.* at ¶ 23).

Based on these factual allegations, Plaintiff filed two separate civil complaints against Defendant: one in the Superior Court of Los Angeles County, California ("California Complaint") and one in the Superior Court of Fulton County, Georgia ("Georgia Complaint"). (*Id.* at ¶¶ 24, 31). Plaintiff attached copies of both state-court

---

1. Both parties acknowledged at the hearing on Defendant's Motion on May 30, 2012 that Plaintiff and Defendant were formerly married. This fact was not alleged in the Com- plaint and the Court does not rely on it, but the Court notes this fact for purposes of comprehension.

complaints to the Complaint in this adversary proceeding. (*Id.* at Exhibits 1 & 2). Both state-court actions were pending at the time the bankruptcy petition was filed.

## A. The Georgia Complaint

The Georgia Complaint asserts three counts. (Georgia Complaint, Exhibit 1, Docket No. 1). Count I is for "Tortious Interference With Business Relations." (*Id.* at p. 3). Plaintiff's claim is based on the text message Defendant sent to the Advisory Director and other key employees of Home Savings, alleging that federal charges were imminent against Plaintiff for harassment, stalking, and financial fraud. (*Id.;* Complaint, ¶ 25). Plaintiff alleged that the text message "disrupted [Plaintiff's] efforts to raise capital for Home Savings." (Georgia Complaint at ¶ 17). Count II is for "Defamation" and is based on the same text message. (*Id.* at p. 4; Complaint ¶ 25). Count III requests punitive damages for Defendant's actions. (Georgia Complaint at 4–5). Plaintiff requested damages of $250,000 for Counts I and II and punitive damages of $1 million for Count III. (*Id.* at p. 5; Complaint ¶¶ 26–27). The Georgia Complaint is pending in the Superior Court of Fulton County. (Complaint ¶ 29).

## B. The California Complaint

The California Complaint asserts six causes of action ("Counts"). (Complaint ¶ 32; California Complaint, Exhibit 2). Count I is for "Intentional Interference With Contractual Relations" and is based on the text message to the Advisory Director and other Home Savings employees; on the statements and threats Defendant made to the Home Savings Board; and on the reports Defendant filed against Plaintiff with government agencies. (California Complaint at ¶ 29). Count II is for "Intentional Interference with Prospective Economic Advantage" and is based on Defendant's interference with the business deal between Home Savings and Guggenheim (referred to in the California Complaint as "Firm A"). (*Id.* at ¶ 35). Count III is for "Intentional Infliction of Emotional Distress" ("IIED") and is based on the emotional distress suffered by Plaintiff as a result of Defendant's intentionally tortious actions. (*Id.* at ¶ 42).

Count IV is for "Defamation" and is based on the text message to the Advisory Director and other Home Savings employees; on Defendant's statements that interfered with the transaction between Home Savings and Guggenheim; on Defendant's statements to the Home Savings Board regarding Plaintiff; on Defendant's statements that Plaintiff cloned her phone and unlawfully accessed Defendant's bank records; and on the complaints Defendant made against Plaintiff to government agencies. (*Id.* at ¶¶ 46–50). Count IV also asserts that Defendant contacted Home Savings's general counsel and alleged that federal charges were being brought against Plaintiff for stalking and financial fraud. (*Id.* at ¶ 51). Counts V and VI are for "Conspiracy to Commit Intentional Torts" and "Aiding and Abetting Commission of Intentional Torts," and assert that Defendant acted with the other named defendants in committing the intentional torts alleged in the complaint. (*Id.* at p. 12–13). Plaintiff seeks general, special, and consequential damages of $3 million dollars, in addition to punitive damages and injunctive relief against the Defendant. (Complaint ¶¶ 33–35). The California Complaint is pending in the Superior Court of Los Angeles County. (Complaint ¶ 36).

## II. *LAW*

### A. Motion to Dismiss Standard

Rule 12(b)(6) of the Federal Rules of Civil Procedure, applicable to this Court

pursuant to Rule 7012(b) of the Federal Rules of Bankruptcy Procedure, permits a defendant in an adversary proceeding to move for dismissal when a plaintiff fails to state a claim upon which relief can be granted. Fed.R.Civ.P. 12(b)(6); Fed. Bankr.P. 7012(b). When determining whether a complaint states a claim upon which relief can be granted, the Court must accept as true the complaint's factual allegations. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007); *Daewoo Motor Am., Inc. v. Gen. Motors Corp.*, 459 F.3d 1249, 1271 (11th Cir.2006). The complaint must contain "sufficient factual matter … to 'state a claim to relief that is plausible on its face.' A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (quoting *Twombly*, 550 U.S. at 570, 127 S.Ct. 1955). "Threadbare recitals of the elements of a cause action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555, 127 S.Ct. 1955).

Plaintiff seeks a determination under 11 U.S.C. § 1328(a)(4) that a debt Defendant potentially owes to Plaintiff is non-dischargeable. (Complaint, ¶¶ 41, 45). That section provides that any debt "for restitution, or damages, awarded in a civil action against the debtor as a result of willful or malicious injury by the debtor that caused personal injury to an individual or the death of an individual" shall not be discharged. 11 U.S.C. § 1328(a)(4). Plaintiff asserts that a judgment against Defendant in Georgia or California is nondischargeable because it is based on willful or malicious personal injury to Plaintiff. (*Id.*).

Defendant asserts three arguments to support her Motion to Dismiss: (1)

§ 1328(a)(4) requires that the damages be awarded before the bankruptcy petition is filed; (2) the alleged harm does not rise to the level of "willful or malicious"; and (3) Plaintiff does not allege personal injury, as defined under § 1328(a)(4). (Motion, ¶¶ 4, 6). The Court will consider each of these arguments.

**B. § 1328(a)(4) Does Not Require an Award be Entered before the Bankruptcy Petition is Filed**

Defendant first argues that "awarded in a civil action" requires that the award for damages or restitution precede the bankruptcy petition for § 1328(a)(4) to apply. (*Id.* at ¶ 6). The Court disagrees. Section 1328(a)(4) exempts from discharge any debt "for restitution, or damages, *awarded* in a civil action against the debtor …" 11 U.S.C. § 1328(a)(4) (emphasis added). Courts have split over the meaning of "awarded." *Compare Parsons v. Byrd (In re Byrd)*, 388 B.R. 875, 876 (Bankr.C.D.Ill.2007) (holding that the award must pre-date the petition date) *with Waag v. Permann (In re Waag)*, 418 B.R. 373, 381 (9th Cir. BAP 2009) (holding that the award can postdate the petition date). Although few cases are directly on point, a majority of cases follow *Waag*. *See, e.g., In re Capote*, 2012 WL 1597375 at *1 (Bankr.S.D.Fla. May 7, 2012). The minority view's argument begins and ends with the interpretation of "awarded" as a past-tense verb. *Byrd*, 388 B.R. at 877. By contrast, the majority view interprets "awarded" as a past participle, modifying "restitution" and "damages," much like "included" in § 1328(a)(3) defines and limits the types of fines that are nondischargeable. *Waag*, 418 B.R. at 378–80. Under this interpretation, § 1328(a)(3) and § 1328(a)(4) are "parallel and designed to distinguish between restitution imposed ('included') in a criminal case and restitution imposed ('awarded') in

a civil case." *Id.* at 380. Reading "awarded" as a past-tense verb ignores the context of § 1328(a) and is not grammatically required. Reading "awarded" as a past participle, however, fits both grammatically and within the context of § 1328(a). The majority view's statutory construction argument is persuasive.

In addition to the statutory construction argument, strong policy reasons support the majority approach. The longstanding bankruptcy policy preventing a debtor from discharging a debt arising out of his own intentional and wrongful actions should not be trumped based solely on the "vagaries of timing." *In re Harrsch,* 432 B.R. 169, 174 (Bankr.E.D.Pa.2010). The minority view would distinguish between similarly situated creditors based solely on a race to the courthouse—i.e., whether a debtor was quick enough to file bankruptcy before an award was entered. *In re Taylor,* 388 B.R. 115, 121 (Bankr.M.D.Pa. 2008). Such a result is opposed to bankruptcy policy. For the foregoing reasons, the Court agrees with the majority view and finds that § 1328(a)(4) does not require the award be entered prior to the bankruptcy petition for the award to be excepted from discharge.

## C. The Conduct Alleged is "Willful or Malicious"

 The Defendant argues that her actions as plead are not willful or malicious for the purposes of § 1328(a)(4) because Plaintiff has failed to show that Defendant intended the results of her actions. (Motion ¶ 7). The Court disagrees and finds the allegations in the Complaint support an inference of willful or malicious conduct. The language of § 1328(a)(4) requires "willful *or* malicious injury," as opposed to the language in § 523(a)(6) of "willful *and* malicious injury." 11 U.S.C. § 1328(a)(4) (emphasis added); 11 U.S.C. § 523(a)(6)

(emphasis added). Thus, Plaintiff need only prove that Defendant's actions were either willful *or* malicious. Further, on motion to dismiss, the court must accept the factual allegations in the Complaint as true. *Twombly,* 550 U.S. at 555, 127 S.Ct. 1955; *Daewoo Motor,* 459 F.3d at 1271.

 Willfulness requires "a showing of an intentional or deliberate act, which is not done merely in reckless disregard of the rights of another." *In re Jennings,* 670 F.3d 1329, 1334 (11th Cir.2012) (internal citation omitted). Additionally, " 'a debtor is responsible for a "willful" injury when he or she commits an intentional act the purpose of which is to cause injury or which is substantially certain to cause injury.' " *Id.* (quoting *In re Walker,* 48 F.3d 1161, 1163 (11th Cir.1995)). Thus, the Plaintiff must allege facts that support an inference that Defendant acted intentionally or deliberately for the purpose of causing the injury, or that Defendant's intentional actions were substantially certain to cause injury. The Court finds that the Plaintiff has alleged sufficient facts to show willfulness. Plaintiff alleges that Defendant's actions were "deliberately calculated" with "specific intent to harm" Plaintiff. (Complaint ¶¶ 12, 20). Specifically, Plaintiff alleges that Defendant's statements to the Home Savings Board and key employees were "intended to damage Plaintiff's reputation"; that the threats she made to kill the Vice President of Home Savings and her children were "inten[ded] to embarrass, humiliate, and cause grave emotional harm to Plaintiff"; and that the text Defendant sent to the Home Savings Board was sent with the "specific intent to harm Plaintiff's reputation." (Complaint, ¶¶ 11, 15, 20). These facts, taken as true, go beyond mere legal conclusions and support an inference that Defendant's actions were willful.

 Defendant's Motion does not argue that her actions were not malicious. (Motion, ¶ 7). But even if Defendant had made that argument, the facts as plead support an inference that the Defendant's actions were malicious. Malicious means " 'wrongful and without just cause or excessive even in the absence of personal hatred, spite or ill-will.' " *In re Jennings*, 670 F.3d at 1334 (quoting *In re Walker*, 48 F.3d at 1164). To establish malice, "a showing of specific intent to harm another is not necessary." *In re Ikner*, 883 F.2d 986, 991 (11th Cir.1989). Here, Plaintiff alleges that Defendant repeatedly contacted Plaintiff's co-workers to accuse Plaintiff of criminally abusive behavior and financial fraud; that Defendant sent a text message to key members of Home Savings, alleging federal charges were imminent against Plaintiff; that Defendant threatened to kill both Plaintiff and the Vice President of Home Savings; that Defendant made false reports against Plaintiff to the U.S. Post Office, FTC, and a police department; that Defendant successfully sabotaged a business deal between Home Savings and Guggenheim by making false statements to a Guggenheim principal about Plaintiff; and that Defendant continues to accuse Plaintiff of cloning her cell phone and illegally accessing her bank accounts. (Complaint ¶¶ 9–23). The volume and severity of Defendant's alleged actions rise to the level of excessiveness required to support an inference of malice. *In re Jennings*, 670 F.3d at 1334.

In conclusion, Plaintiff has pled sufficient facts to support an inference that Defendant's actions were either willful or malicious, or both. Accordingly, under the motion to dismiss standard, the Court finds that the requirement of "willful or malicious" conduct set out in § 1328(a)(4) has been met. Plaintiff's Complaint cannot be dismissed for failure to allege facts showing willful or malicious injury.

## D. The Complaint Alleges Claims For Personal Injury

### 1. Defining Personal Injury in 11 U.S.C. § 1328(a)(4)

 In her principal argument, Defendant argues that Plaintiff's allegations of financial and business harm, defamation, and intentional infliction of emotional distress are not based on injuries that are personal injuries under § 1328(a)(4). In other words, Defendant argues that an award for "personal injury" damages in § 1328(a)(4) does not include damages for defamation and intentional infliction of emotional distress, and thus no relief can be granted to Plaintiff on a claim under § 1328(a)(4). Under Defendant's view, the term "personal injury" should be defined narrowly to include only physical injury. Defendant argues that Plaintiff only alleges "economic injury," which would include injury to an individual that is not physical in nature. Further, Defendant argues that this narrow definition of "personal injury" should be adopted because exceptions to discharge are construed narrowly.

Resolving the issue raised by Defendant requires the Court to define the term "personal injury" in § 1328(a)(4). As always, in determining the meaning of language in the Bankruptcy Code, the Court turns first to the Bankruptcy Code itself. Section 1328(a)(4) was enacted with the amendments made to the Bankruptcy Code as part of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005. In addition to § 1328(a)(4), "personal injury" (or a similar phrase) appears several times in the Code. For example, "personal injury" appears in Title 28 in the language "personal injury tort claim." 28 U.S.C. § 157(b)(5). The term "personal injury," however, is not defined in either Title 11 or Title 28 (which provides the jurisdictional basis for Title 11).

Although "personal injury" is not defined, its meaning can be gleaned by a review of other Bankruptcy Code sections, as well as by the construction of personal injury in other federal statutes. First, a comparison of 11 U.S.C. § 523(a)(6) with § 1328(a)(4) reinforces that "personal injury" in § 1328(a)(4) was meant to exclude injuries to property. Section 523(a)(6) governs the exception from discharge of debts for willful and malicious injury in Chapter 7 cases. That section excepts from discharge a debt "for willful and malicious injury by the debtor to another entity or to the property of another entity...." 11 U.S.C. § 523(a)(6). Chapter 13 does not apply § 523(a)(6); instead, in Chapter 13, § 1328(a)(4) provides only for the exception from discharge of damages for "personal injury to an individual or the death of an individual." 11 U.S.C. § 1328(a)(4); *Textron Fin. Corp. v. Hadley (In re Hadley)*, 2011 WL 3664746, *11 (Bankr.E.D.Va. August 19, 2011). By omitting § 523(a)(6)'s language, "to the property of another entity," § 1328(a)(4) excepts only a limited range of debts from discharge. This omission is significant, because when "Congress includes particular language in one section of a statute but omits it in another provision of the same Act, it is generally presumed that Congress acts intentionally and purposefully in the disparate inclusion or exclusion." *Tovar v. U.S. Atty. Gen.*, 646 F.3d 1300, 1306 (11th Cir.2011)(citing *Russello v. United States.*, 464 U.S. 16, 23, 104 S.Ct. 296, 78 L.Ed.2d 17 (1983)). Thus, "personal injury" in § 1328(a)(4) should be defined in contradistinction to injury to property; the emphasis in § 1328(a)(4) is on injury to an individual.

Second, while a distinction is made between personal injury and injury to property, nothing in § 1328(a)(4) or the Bankruptcy Code suggests that "personal injury" should be limited to a subset of injuries to the person (e.g., personal injuries involving physical injury or trauma). Indeed, the opposite is true. In light of 11 U.S.C. § 522(d)(11), where the language "personal bodily injury" appears, "Congress knew how to say 'personal *bodily* injury' when it wanted to." *In re Ice Cream Liquidation, Inc.*, 281 B.R. 154, 160 (Bankr.D.Conn.2002) (citing 11 U.S.C. § 522(d)(11)) (emphasis added). In § 1328(a)(4), by contrast, Congress chose to use an unrestricted version of personal injury. This unrestricted version suggests Congress intended "personal injury" to be construed broadly. *See In re Poole Funeral Chapel, Inc.*, 63 B.R. 527, 530 (Bankr.N.D.Ala.1986).

Third, construing "personal injury" to include nonphysical injuries is consistent with other constructions of "personal injury" in the Bankruptcy Code and beyond. For example, "personal injury" appears in the language "personal injury tort or wrongful death claims" in 28 U.S.C. §§ 157(b)(2)(O) and 157(b)(5) (stating that the liquidation of personal injury tort or wrongful death claims is not a core proceeding under Title 11). Three approaches have emerged for construing the extent of claims covered under "personal injury tort or wrongful death claims." *Adelson v. Smith (In re Smith)*, 389 B.R. 902, 908 (Bankr.D.Nev.2008). First, there is a "narrow approach," which would require physical injury. *Id.* Next, there is a "middle approach," which would include nonphysical injuries but exclude business and financial injuries. *Id.* Finally, there is a "broad approach," which could include business and financial injuries if they are defined as personal injury torts under nonbankruptcy law. *Id.* Many courts are now defining personal injury tort claim according to the "middle approach" of the three approaches. *See, e.g., Id.; Elkes Dev., LLC v. Arnold (In re Arnold)*, 407 B.R.

849, 853 (Bankr.M.D.N.C.2009). The middle approach is the best-reasoned because it includes "traditional personal injury torts" based on emotional and reputational harms, while avoiding a definition of personal injury tort claim based solely on a claim's classification under non-bankruptcy law. *Smith,* 389 B.R. at 908; *Arnold,* 407 B.R. at 853.

█ In other federal statutes, the term "personal injuries" has been construed to include nonphysical injuries such as defamation and intentional infliction of emotional distress. Courts construing former Internal Revenue Code § 104(a)(2), which refers to "damages received on account of personal injury," concluded that personal injury included damages for defamation. *Rickel v. Comm'r,* 900 F.2d 655, 658 (3d Cir.1990) (stating that "it is judicially well-established that the meaning of 'personal injuries' . . . encompasses both nonphysical as well as physical injuries."). The Supreme Court took this same view in *United States v. Burke,* noting that this view accorded with the traditional understanding of personal injury torts and with IRS regulations since 1960. *United States v. Burke,* 504 U.S. 229, 234–237, 112 S.Ct. 1867, 119 L.Ed.2d 34 (1992). Congress thereafter amended I.R.C. § 104(a)(2) in 1996, changing the language to explicitly provide, "damages (other than punitive damages) received . . . on account of personal physical injury or physical sickness." The Small Business Protection Act of 1996, Pub.L. No. 104–188, § 1605, 110 Stat. 1838. Congress was therefore aware of the judicial interpretation of "personal injury" and amended the statute to provide a different meaning. "When Congress enacts a statute using a phrase that has a settled judicial interpretation, it is presumed to be aware of the prior interpretation." *In re Ford,* 574 F.3d 1279, 1283 (10th Cir.2009) (citing *Comm'r v. Keystone*

*Consol. Indus., Inc.,* 508 U.S. 152, 159, 113 S.Ct. 2006, 124 L.Ed.2d 71 (1993)). Given that "personal injuries" had a settled meaning in the I.R.C., and given the amendment to § 104(a)(2) in 1996, Congress can be presumed to have understood the difference between "personal injury" and "personal physical (or bodily) injury" when drafting 11 U.S.C. § 1328(a)(4) for the 2005 amendments to the Bankruptcy Code.

In summary, other sections of the Bankruptcy Code and the Internal Revenue Code help to give meaning to "personal injury" in § 1328(a)(4). "Personal injury" distinguishes injuries to an individual from injuries to property. And Congress could have limited "personal injury" to personal *bodily* or *physical* injury, but Congress did not. Finally, "personal injury tort claim" and "personal injuries" have elsewhere been defined to include both physical and nonphysical injuries. In light of these considerations, the Court defines "personal injury" in § 1328(a)(4) to exclude injuries to property, but to include nonphysical injuries such as defamation and emotional distress. Adopting this definition does not end the analysis, however.

█ The Court must still analyze the state-court causes of action to see if the claims alleged there involve personal injury or injury to property. This analysis is necessary for two reasons. First, personal injury claims are historically creatures of state law. This Court does not see how to accurately determine whether a claim involves personal injury—despite its label—except by looking to its elements and treatment under state law. Further, analyzing the complaints and state law avoids here the same problem highlighted in *Smith* with respect to 28 U.S.C. § 157: that financial or business torts might be considered "personal injury torts" merely because they are labeled so under state

law. *Smith,* 389 B.R. at 908. While these labels are indeed strong contextual clues, they cannot give the final word on whether a tort is personal injury tort. Second, the language in § 1328, "for restitution, or damages, awarded in a civil action against the debtor," suggests that the award for damages will be made in a non-bankruptcy court. It is natural, then, that a bankruptcy court will look to the complaint or award for damages in the state court, where common law tort claims are most commonly adjudicated.

## 2. Georgia Complaint

■■■■ The Georgia Complaint contains claims for both personal injuries and injuries to property. Count I, for Tortious Interference with Business Relations ("TIBR"), alleges injury only to property, rather than personal injury. To establish a claim under TIBR, Plaintiff must show Defendant:

(1) acted improperly and without privilege, (2) purposely and with malice with the intent to injure, (3) induced a third party or parties not to enter into or continue a business relationship with the plaintiff, and (4) for which the plaintiff suffered some financial injury.

*Integrated Micro Systems, Inc. v. NEC Home Elecs. (USA), Inc.,* 174 Ga.App. 197, 200, 329 S.E.2d 554 (1985). This claim is an injury to property for three reasons. First, the elements of the tort require some financial harm to the plaintiff, through the loss of a business relationship, caused by the defendant. Second, the harm alleged in the Complaint is harm to the business, Home Savings, rather than the Plaintiff himself. (Complaint, ¶ 18). Third, any harm alleged to the Plaintiff's reputation is harm directed specifically at his business reputation, as distinguished from personal reputation. In Georgia, business reputation has been differentiated

from personal reputation and is considered a property interest. *NAACP v. Overstreet,* 221 Ga. 16, 142 S.E.2d 816, 823 (1965). Thus, Count I for TIBR of the Georgia Complaint alleges damages to Plaintiff's property. A judgment on this claim is not for personal injury under § 1328(a)(4) and could therefore be discharged in Chapter 13. Accordingly, Defendant's Motion to Dismiss is granted with respect to Count I for TIBR of the Georgia Complaint.

■■■■ Count II, for Defamation, alleges personal injury. Georgia distinguishes between libel and slander in its Code. O.C.G.A. § 51–5. The distinctions between libel and slander are immaterial for the purposes of § 1328(a)(4), but the elements of each are important to their classification as personal injury torts. Slander or oral defamation consists of:

(1) Imputing to another a crime punishable by law; (2) Charging a person with having some contagious disorder or with being guilty of some debasing act which may exclude him from society; (3) Making charges against another in reference to his trade, office, or profession, calculated to injure him therein; or (4) Uttering any disparaging words productive of special damage which flows naturally therefrom.

O.C.G.A. § 51–5–4. These elements concern damages to reputation, and they leave room to distinguish injury to personal reputation from injury specifically to business reputation. Like slander, "libel is a false and malicious defamation of another, expressed in print, writing, pictures, or signs, tending to injure the reputation of the person and exposing him to public hatred, contempt, or ridicule." O.C.G.A. § 51–5–1(a). The critical element, common to both claims, is injury to reputation, which is a personal injury in Georgia. *See* O.C.G.A. §§ 51–5–1; 51–5–4. That injury

to reputation is a personal injury is clear for several reasons. First, both libel and slander are considered "injuries to the reputation" under Georgia's statute of limitations for "Injuries to the Person." O.C.G.A. § 9–3–33. Next, case law in Georgia describes a "personal tort" as one involving "injury to the person, *to the reputation,* or to feelings, as distinguished from an injury or damage to real or personal property, which [are] property tort[s]." *Villanueva v. First Am. Title Ins.,* 313 Ga.App. 164, 721 S.E.2d 150, 155 (2011); *see also Hubbard v. Ruff,* 97 Ga. App. 251, 103 S.E.2d 134, 137 (1958) ("A personal tort, as defined by Black's Law Dictionary, is 'one involving or consisting of an injury to the person or to the reputation or feelings, as distinguished from an injury or damage to real or personal property.' "). Thus, Count II, for Defamation, alleges personal injury. Accordingly, Defendant's Motion to Dismiss is denied with respect to Count II of the Georgia Complaint.

■ Count III seeks punitive damages for the Defendant's collective actions. Any punitive damages awarded are non-dischargeable to the extent they are for personal injury, not injury to property. Punitive damages are not excluded by § 1328(a)(4) for several reasons. First, § 1328(a)(4) does not specifically exclude punitive damages for personal injury. Instead, § 1328(a)(4) excepts from discharge "*any debt* ... for ... damages, awarded in a civil action...." § 1328(a) (emphasis added); § 1328(a)(4). This non-specific language suggests that "damages" should be construed broadly. Second, punitive damages for willfully or maliciously causing personal injury are analogous to punitive or treble damages for fraud: both are intended to deter bad conduct. O.C.G.A. § 51–12–5.1 (2012) (stating that "[p]unitive damages shall be awarded ... solely to punish, penalize, or deter a defendant.").

With respect to fraud, the Supreme Court has ruled that " § 523(a)(2)(A) prevents the discharge of *all liability* arising from fraud, and that an award of treble damages therefore falls within the scope of the exception." *Cohen v. de la Cruz,* 523 U.S. 213, 215, 118 S.Ct. 1212, 140 L.Ed.2d 341 (1998) (emphasis added). Further, § 523(a) uses the same "any debt" language as § 1328(a). 11 U.S.C. § 523(a). "[W]hen language is used in one section of a statute and the same language is used in another section, we can infer that Congress intended the same meaning." *In re Consol. Freightways Corp. of Del.,* 564 F.3d 1161, 1165 (9th Cir.2009) (citing *Sorenson v. Sec'y of the Treasury,* 475 U.S. 851, 860, 106 S.Ct. 1600, 89 L.Ed.2d 855 (1986)). Under this rule of statutory construction, "any debt" should be construed the same in both § 1328(a) and § 523(a) as preventing from discharge all liability arising out of the circumstances enumerated in its subsections. Section 1328(a)(4) should thus be construed as preventing the discharge of all liability arising from willful or malicious personal injury, including an award of punitive damages. Because the state courts have not entered judgments stating to what extent punitive damages, if any, are applicable to the personal injury claims, it is inappropriate at this stage to dismiss Count III of the Georgia Complaint. Accordingly, Defendant's motion to dismiss is denied with respect to Count III of the Georgia Complaint.

In conclusion, Count I of the Georgia Complaint, for Tortious Interference with Business Relations, is not excepted from discharge by § 1328(a)(4) because it does not involve personal injury. Count II, for Defamation, involves for personal injury and may therefore be excepted from discharge. Count III, for punitive damages, may also be excepted from discharge under § 1328(a)(4) to the extent punitive

damages are awarded based on personal injury. Accordingly, Defendant's motion to dismiss is granted as to the extent it is based on Count I of the Georgia Complaint and denied to the extent it is based on Counts II and III of the Georgia Complaint.

### 3. California Complaint

 The six Counts in the California Complaint comprise claims for personal injury and claims for injury to property. On their face, Counts I and II allege harm to property rather than personal injury. Closer analysis of the elements confirms this prima facie conclusion. For Count I, the elements of Intentional Interference With Contractual Relations are:

> (1) a valid contract between plaintiff and a third party; (2) defendant's knowledge of this contract; (3) defendant's intentional acts designed to induce a breach or disruption of the contractual relationship; (4) actual breach or disruption of the contractual relationship; and (5) resulting damage.

*Scripps Clinic v. Superior Court,* 108 Cal. App.4th 917, 929, 134 Cal.Rptr.2d 101 (2003). For Count II, the elements of Intentional Interference With Prospective Economic Advantage are:

> (1) an economic relationship; (2) defendant's knowledge of the relationship; (3) an intentional act by the defendant, designed to disrupt the relationship; (4) actual disruption of the relationship; and (5) economic harm to the plaintiff proximately caused by the defendant's wrongful act, including an intentional act by the defendant that is designed to disrupt the relationship between the plaintiff and a third party.

*Edwards v. Arthur Andersen LLP,* 44 Cal.4th 937, 81 Cal.Rptr.3d 282, 189 P.3d 285, 290 (2008). As indicated by the elements of both claims, the damages alleged are purely economic: they concern the loss of anticipated or realized wealth from contractual or economic relationships. The damages are to some form of property ownership (whether in cash, securities, real property, etc.), not to Plaintiff's person or reputation. Accordingly, these claims are injuries to property rather than personal injuries within the context of § 1328(a)(4).

 Count III, however, alleges personal injuries rather than injuries to property. The elements for IIED are:

> (1) extreme and outrageous conduct by the defendant; (2) intent to cause, or reckless disregard of the probability of causing, emotional distress; (3) plaintiff's suffering severe or extreme emotional distress; and (4) actual and proximate causation of the emotional distress by the defendant's outrageous conduct.

*Clark v. County of Tulare,* 755 F.Supp.2d 1075, 1090 (E.D.Cal.2010). In contrast to Counts I and II, the elements of IIED require for recovery neither economic harm nor damage to a business or contractual relation. And California courts have stated that IIED is "designed to redress primarily invasions of the *personal interest* in emotional tranquility, not economic losses, unless, of course, the economic losses result from the intentionally caused emotional distress." *Fletcher v. W. Nat'l Life Ins. Co.,* 10 Cal.App.3d 376, 402, 89 Cal. Rptr. 78 (1970) (emphasis added). Further, recovery under IIED does not require physical disability and can be based on emotional distress alone. *Id.* at 396–97, 89 Cal.Rptr. 78. Thus, whether Plaintiff alleged actual physical injury is immaterial. Finally, California's statute of limitations for personal injury has specifically been found applicable to IIED claims. *See, e.g., Cantu v. Resolution Trust Corp.,* 4 Cal.App.4th 857, 889, 6 Cal.Rptr.2d 151 (1992) ("Because intentional infliction of emotional distress is an injury to the per-

son, the applicable statute of limitations is one year."). Given the foregoing, the Court finds that Plaintiff's IIED claim is a personal injury claim excepted from discharge under § 1328(a)(4).

 Count IV, for Defamation, also alleges personal injury rather than injury to property. First, Defamation is listed under the division of the California Code entitled "Persons" as opposed to the division entitled "Property." *See* CAL. CIV. CODE § 44 (West 2012). Second, unlike claims for intentional interference with contractual relations or economic advantage, defamation does not require economic or business harm.[2] Rather, Defamation, like IIED, addresses harm to one's reputation. Some courts have held that an injury to reputation "affects a proprietary interest and as such is not a personal injury at all." *Battista v. Chrysler Corp.*, 454 A.2d 286, 289 (Del.Super.1982). But these courts generally reach this conclusion when considering the types of injuries covered by workers' compensation statutes. *Id.* "The purpose of workers' compensation is to extend its benefits for the protection of persons injured on the job." *Andersen v. Workers' Comp. Appeals Bd.*, 149 Cal. App.4th 1369, 1375–76, 57 Cal.Rptr.3d 839 (2007). Further, "[worker's compensation] is a form of strict liability requiring em-

ployers to compensate employees for injuries or diseases arising out of the course of employment regardless of fault." *Harrison v. Digital Health Plan*, 183 F.3d 1235, 1241 (11th Cir.1999) (internal citation omitted). Consequently, the context of workers' compensation requires a narrower definition of personal injury. That narrow definition is distinguishable here, where the broader context of personal injury torts under common law and general statutory law is being considered.

Finally, Count V (Conspiracy to Commit Intentional Torts) and Count VI (Aiding and Abetting Commission of Intentional Torts) of the California Complaint are not stand-alone torts; rather, these Counts seek to impose vicarious liability on all members of the conspiracy. *Berg & Berg Enters., LLC v. Sherwood Partners, Inc.*, 131 Cal.App.4th 802, 823, 32 Cal.Rptr.3d 325 (2005). As a result, they add nothing to the personal injury claims asserted or the damages prayed for.

In conclusion, Count III (IIED) and Count IV (Defamation) allege damages for personal injury. An award for damages on these Counts may be excepted from discharge under § 1328(a)(4). But all other Counts in the California Complaint allege injuries to property and can be dis-

---

**2.** California law defines defamation as libel or slander. CAL. CIV.CODE § 44 (West 2012). Libel is defined as

a false and unprivileged publication by writing, printing, picture, effigy, or other fixed representation to the eye, which exposes any person to hatred, contempt, ridicule, or obloquy, or which causes him to be shunned or avoided, or which has a tendency to injure him in his occupation.

CAL. CIV.CODE § 45 (West 2012). Slander is defined as:

a false and unprivileged publication, orally uttered, and also communications by radio or any mechanical or other means which: 1. Charges any person with crime, or with having been indicted, convicted, or pun-

ished for crime; 2. Imputes in him the present existence of an infectious, contagious, or loathsome disease; 3. Tends directly to injure him in respect to his office, profession, trade or business, either by imputing to him general disqualification in those respects which the office or other occupation peculiarly requires, or by imputing something with reference to his office, profession, trade, or business that has a natural tendency to lessen its profits; 4. Imputes to him impotence or a want of chastity; or

5. Which, by natural consequence, causes actual damage.

CAL. CIV.CODE § 46 (West 2012).

charged in Chapter 13. Accordingly, Defendant's motion to dismiss is granted as to the extent it is based on Counts I, II, V, and VI of the California Complaint.

## III. *CONCLUSION*

Defendant's Motion to Dismiss is denied in part and granted in part. Plaintiff states a claim for relief even though the bankruptcy petition was filed before an award for damages was entered in the state-court actions. And Plaintiff alleges sufficient facts to support willful or malicious injury. Finally, some of Plaintiff's state-court claims could result in an award for "personal injury," as summarized below.

Plaintiff has failed to state claims for relief under 11 U.S.C. § 1328(a)(4) to the extent Plaintiff relies on state-court causes of actions that are not for personal injury. Count I of Plaintiff's Complaint in this adversary proceeding seeks to except from discharge an award for damages in the Georgia Complaint. Count I of the adversary Complaint fails to state a claim for relief under 11 U.S.C. § 1328(a)(4) to the extent it is based on Count I of the Georgia Complaint (for tortious interference with business relations). But Count I of the adversary Complaint states a valid claim for relief with respect to Count II (Defamation) and Count III (Punitive Damages based on personal injury) of the Georgia Complaint.

Count II of the adversary Complaint is based on the California Complaint. Plaintiff fails to state a claim for relief under 11 U.S.C. § 1328(a)(4) in this adversary proceeding to the extent it is based on the following Counts in the California Complaint: Count I (Intentional Interference with Contractual Relations), Count II (Intentional Interference with Prospective Economic Advantage), Count V (Conspiracy to Commit Intentional Torts), and Count VI (Aiding and Abetting Commission of Intentional Torts). However, Count II of the adversary Complaint states a valid claim for relief with respect to Count III (Intentional Infliction of Emotional Distress) and Count IV (Defamation) of the California Complaint.

Accordingly, it is

**ORDERED** that Defendant's Motion to Dismiss is **GRANTED IN PART** and **DENIED IN PART** as described above.