1999 PA Super 33

Lynn A. URBAN, Appellant,

v.

DOLLAR BANK.

Superior Court of Pennsylvania.

Argued June 20, 1998.

Filed Feb. 18, 1999.

Patrick J. Loughren, Pittsburgh, for appellant.

Lori D. Mendicino, Pittsburgh, for Dollar Bank, appellee.

Before FORD ELLIOTT, EAKIN, and BECK, JJ.

FORD ELLIOTT, J.:

¶ 1 Appellant Lynn Urban appeals from the June 4, 1997 order granting summary judgment to defendant Dollar Bank ("Bank") on the ground that appellant's claims are subject to the exclusivity provisions of the Workers' Compensation Act, 77 P.S. § 1 *et seq.* (the "Act"). In this unusual case of first impression, we find that appellant's claims for defamation and malicious abuse of process are not subject to the exclusivity provisions of the Act. Accordingly, we reverse.

¶ 2 The facts of the case, taken in the light most favorable to appellant as the non-moving party, are as follows. Appellant was a lead teller at the Virginia Manor branch of the Bank for fourteen years. Appellant was scheduled to leave for a three-week vacation to Florida beginning Saturday, February 12, 1994. During the week leading up to appellant's vacation, a Bank employee, Angela Williams, told her supervisor that on Monday, February 7, 1994, she had overheard appellant say, "I'm glad I'm going on vacation otherwise I would have no problem bringing a gun in here and killing someone." This report was false, and Bank personnel knew it was false.

¶ 3 Appellant worked through the week without incident. At approximately 11:00 a.m. on Friday, February 11, 1994, appellant's supervisor told her that she could leave early. She did so, and went home to begin packing for her vacation. On that same day, Ms. Williams filed an application for involuntary commitment of appellant pursuant to § 302 of the Mental Health Procedures Act of 1976, 50 P.S. § 7302 ("§ 302").

¶ 4 That afternoon, Bethel Park police officers arrived at appellant's home to execute the § 302 commitment. The officers found her calm and cooperative. Officer Lawrence Hornak called the Bank to see if it would drop the § 302 commitment. Officer Hornak spoke with Mt. Lebanon police officer Mark Kubit, who had been dispatched to the Bank. Officer Kubit asked Ms. Williams if she still wanted to proceed with the commitment. Ms. Williams said that she did. Appellant was surprised to hear that the Bank had instituted such proceedings against her, but did not act in a bizarre or violent fashion. Appellant was then strapped to a gurney by paramedics and taken to St. Clair Memorial Hospital. She remained there for several hours until she was interviewed by psychiatrist Jack Mannheimer. Fifteen minutes later, appellant was released. Evidence in the record suggests that the Bank wanted to terminate appellant's employment, and had been creating a record to justify such eventual termination.

¶ 5 On May 27, 1994, appellant filed a complaint against the Bank for malicious abuse of process (count 1), intentional infliction of emotional distress (count 2), defamation (counts 3 and 6), conspiracy (count 4), and negligent infliction of emotional distress (count 5).[1] She alleged that the Bank filed a § 302 application against her both to inflict severe emotional distress and to bring about her termination from the Bank. Appellant sought compensation for injury to her reputation, severe emotional distress, diminution in earning capacity, and loss of ability to enjoy the pleasures of life. She also sought punitive damages.

¶ 6 On January 6, 1997, the Bank filed a motion for summary judgment, arguing, *inter alia*, that all of appellant's claims were barred by the exclusivity provisions of the Act. The trial court agreed and dismissed appellant's claims on June 4, 1997. This appeal followed.[2]

> When presented with a challenge to an order granting summary judgment, we view the record in the light most favorable to the non-moving party, resolving all doubts as to the existence of a genuine issue of material fact against the moving party. *Ertel v. Patriot–News Company*, 544 Pa. 93, 674 A.2d 1038 (1996). Concerning questions of law, our scope of review is plenary. *Id.* We are not bound by a trial court's conclusions of law; instead, we may draw our own inferences and reach our own conclusions. *Butterfield v. Giuntoli*, 448 Pa.Super. 1, 670 A.2d 646 (1995), *appeal denied*, 546 Pa. 635, 683 A.2d 875 (1996).

*Borden, Inc. v. Advent Ink Co.*, 701 A.2d 255, 258 (Pa.Super.1997), *appeal denied*, 1998 Pa. Lexis 1508, —— Pa. ——, —— A.2d —— (July 7, 1998). "The moving party has the burden of proving the nonexistence of any genuine

---

1. Appellant conceded entry of judgment in favor of the Bank as to Count 4 for conspiracy.

2. Appellant has not presented any argument on appeal as to how the court erred in holding that her claims for intentional infliction of emotional distress (count 2) and negligent infliction of emotional distress (count 5) are barred by the exclusivity provisions of the Act. Therefore, any argument as to these counts is waived, and we affirm the judgment of the trial court thereon.

issue of material fact." *Salazar v. Allstate Ins. Co.*, 549 Pa. 658, 662, 702 A.2d 1038, 1040 (1997). Our review of the record is plenary. *Keselyak v. Reach All*, 443 Pa.Super. 71, 660 A.2d 1350, 1352 (1995).

¶ 7 The Act provides the exclusive remedy for employees who are "entitled to damages in any action at law or otherwise on account of any injury or death as defined in [sections 411(1) and 411(2)[3]]." 77 P.S. § 481(a). Section 411(1) reads as follows:

> **§ 411. 'Injury,' 'personal injury,' and 'injury arising in the course of his employment' defined**
>
> (1) The terms 'injury' and 'personal injury,' as used in this act, shall be construed to mean an injury to an employe, regardless of his previous physical condition, arising in the course of his employment and related thereto, and such disease or infection as naturally results from the injury or is aggravated, reactivated or accelerated by the injury.... The term 'injury arising in the course of his employment,' as used in this article ... shall include all other injuries sustained while the employe is actually engaged in the furtherance of the business or affairs of the employer, whether upon the employer's premises or elsewhere, and shall include all injuries caused by the condition of the premises or by the operation of the employer's business or affairs thereon, sustained by the employe, who, though not so engaged, is injured upon the premises occupied by or under the control of the employer, or upon which the employer's business or affairs are being carried on, the employe's presence thereon being required by the nature of his employment.

77 P.S. § 411(1).[4] The Act does not bar a common-law claim against an employer if the injury is not within the scope of the Act.

**3.** Section 411(2) concerns occupational diseases, and is not at issue here.

**4.** The omitted portions of Section 411(1) concern (1) injuries causing death, (2) the "personal ani-

*Martin v. Lancaster Battery Co.*, 530 Pa. 11, 17, 606 A.2d 444, 448 (1992); *Kuney v. PMA Ins. Co.*, 525 Pa. 171, 175, 578 A.2d 1285, 1286 (1990); *Grant v. GAF Corp.*, 415 Pa.Super. 137, 608 A.2d 1047, 1059 (1992), *affirmed sub nom. Gasperin v. GAF Corp.*, 536 Pa. 429, 639 A.2d 1170 (1994).

¶ 8 We begin with appellant's defamation claim. The question whether a claim for harm to one's reputation is barred by the Act is one of first impression in Pennsylvania. Appellant argues that her "claims for defamation and malicious abuse of civil process do not fall within the exclusivity provisions of the [Act] because the Act provides no remedy for the injuries caused by these torts." (Appellant's brief at 20.) For this proposition appellant cites "the scholarly analysis of Judge Wieand in his dissenting opinion [in] *Hammerstein v. Lindsay*, 440 Pa.Super. 350, 655 A.2d 597 (1995)." (*Id.* at 23.)

¶ 9 In *Hammerstein*, a unit clerk at a hospital alleged that she suffered months of derogatory and defamatory remarks by Dr. David Lindsay, who also worked at the hospital. Eventually Hammerstein left her job with the hospital. She filed suit against Dr. Lindsay and the hospital for slander/defamation and intentional infliction of emotional distress, among other claims. The trial court granted the hospital's motion for judgment on the pleadings, and dismissed the case on the ground that Hammerstein's claims were barred by the exclusivity provisions of the Act. Hammerstein appealed, raising only the question of whether the "personal animus" exception applied to the facts as alleged. The majority noted that by raising only the personal animus *exception*, Hammerstein had implicitly conceded that the Act does apply *generally* to defamation claims. *Hammerstein*, 655 A.2d at 600 n. 4. As a result of this concession, the majority declined to decide this "interesting issue" on the merits. *Id.* Judge Wieand, in a dissenting opinion, found that the issue had been preserved and further opined that the Act would not apply to claims of injury to reputation.

mus" exception to the Act, which is not argued here, and (3) injuries caused while the employee is operating a vehicle provided by the employer.

¶ 10  We find Judge Wieand's analysis on this issue to be persuasive and hereby adopt it. First, Judge Wieand noted that "in order to determine whether an employee's alleged injury is subject to the exclusive remedies of the Act or whether such injury is remediable in a common law tort action, a court 'must examine the scope of the statute and its remedies to determine the intent of the legislature.'" *Id.* at 604 (Wieand, J., dissenting), citing *Kuney, supra* at 175, 578 A.2d at 1286. When the Act was first adopted in 1915, it defined "injury" as "violence to the physical structure of the body, and such disease or infection as naturally results therefrom...." *Hammerstein*, 655 A.2d at 604 (Wieand, J., dissenting), citing Act of June 2, 1915, P.L. 301(c), 77 P.S. § 411 (1915). In 1972, the Act broadened its concept of a compensable injury as reflected in current § 411(1) and 411(2).

¶ 11  The term "injury" is not specifically defined in the Act. *Pawlosky v. Workmen's Compensation Appeal Board [Latrobe Brewing Co.]*, 514 Pa. 450, 458, 525 A.2d 1204, 1209 (1987). We must interpret the term in accordance with its common and approved usage. *Id.* *Pawlosky* noted that "in common speech the word 'injury,' as applied to personal injury to a human being, includes whatever lesion or change in any part of the system produces harm or pain, or a lessened facility of the natural use of any bodily activity or capability." *Id.* (citation and emphasis omitted). Pennsylvania appellate courts have interpreted "injury" to include physical impairment, occupational disease, and mental illness or psychiatric injury, all of which can form the basis for a disability under the Act. *Hammerstein*, 655 A.2d at 605 (Wieand, J., dissenting), citing *Martin v. Ketchum, Inc.*, 523 Pa. 509, 516, 568 A.2d 159, 163 (1990); *Al's Radiator Serv. v. WCAB (Jorden's Radiator Serv.)*, 157 Pa.Commw. 432, 435, 630 A.2d 485, 487 (1993); and *Archer v. WCAB (General Motors)*, 138 Pa.Commw. 309, 314, 587 A.2d 901, 903 (1991).

¶ 12  Next, Judge Wieand studied the compensation structure of the Act and con-cluded that injured workers are entitled to recover for partial or total "disability," *i.e.*, diminution in earning power, and for medical services. *Hammerstein*, 655 A.2d at 605 (Wieand, J., dissenting), citing, *inter alia*, 77 P.S. §§ 511–513, 516 and *Kachinski v. WCAB (Vepco Constr. Co.)*, 516 Pa. 240, 248, 532 A.2d 374, 378 (1987). *See also United Cerebral Palsy v. WCAB (Emph)*, 543 Pa. 544, 554–555, 673 A.2d 882, 887 (1996) ("disability" is synonymous with a diminution in earning power); *Markle v. WCAB (Caterpillar Tractor Co.)*, 541 Pa. 148, 153, 661 A.2d 1355, 1358 (1995) (benefits are tied to wages at the time of the injury); *Volk v. WCAB (Consolidation Coal Co.)*, 167 Pa. Commw. 75, 84, 647 A.2d 624, 629 (1994) (citations omitted) (injuries are generally compensable under the Act only insofar as they result in a "disability").

¶ 13  In contrast to injuries to one's physical or psychiatric well-being, a defamation action is designed to redress harm to one's reputation.[5] *Hammerstein*, 655 A.2d at 605 (Wieand, J., dissenting), citing *Berg v. Consolidated Freightways, Inc.*, 280 Pa.Super. 495, 421 A.2d 831, 833 (1980).

> The essence of the action, therefore, is not to compensate one for an 'injury' as contemplated by the [Act], *i.e.*, a physical or emotional impairment to one's person which often requires medical treatment. 'In fact, an injury to reputation affects a proprietary interest and as such is not a personal injury at all, any concomitant physical or mental injury notwithstanding.'

*Hammerstein*, 655 A.2d at 605–606 (Wieand, J., dissenting), citing *Battista v. Chrysler Corp.*, 454 A.2d 286, 289 (Del.Super.1982). Judge Wieand concluded that because the Act is not designed to compensate individuals for harm to reputation, and does not provide benefits therefor, the exclusivity provision would not apply and Hammerstein would be able to pursue her claim at common law.

¶ 14  The Bank asserts that such a conclusion is contrary to the law in Pennsylvania, to

---

**5.** A statement is defamatory if it (1) so harms the reputation of the complaining party so as to lower her in the estimation of the community, (2) deters third parties from associating or dealing with her, (3) exposes her to public hatred, con-tempt, or ridicule, or (4) adversely affects her fitness for the proper conduct of her lawful business or profession. *Green v. Mizner*, 692 A.2d 169, 172 (Pa.Super.1997).

wit that intentional torts committed by the employer are covered under the Act. (Bank's brief at 18 n. 5, citing, *inter alia, Shaffer v. Procter & Gamble*, 412 Pa.Super. 630, 604 A.2d 289 (1992), *appeal denied*, 532 Pa. 665, 616 A.2d 986 (1992).) While we agree that certain work-related injuries caused by the intentional conduct of the employer which require medical attention and result in lost wages have been found to be covered by the Act, not all intentional torts committed by an employer fall within this category.

¶ 15 In *Shaffer*, a case relied upon by both the Bank and the trial court, this court, in affirming the dismissal of claims for intentional infliction of emotional distress and intentional interference with contractual relationship, relied upon *Kuney, supra*, in deciding that where "the allegations of a claim have as their ultimate basis an injury compensable under [the Act], the claim must be considered within the framework of the statute." *Shaffer*, 604 A.2d at 292, citing *Kuney, supra* at 176, 578 A.2d at 1287. We do not read this language as bringing within the purview of the Act any and all injuries which arise within the context of the employment relationship, regardless of whether a remedy is provided by the Act. If this were so, there would be little "quid" in "quid pro quo." Rather, we find that the *Shaffer* court was dealing with an injury specifically covered by the Act and with causes of action which subsequently arose because the compensation claim was thereafter mishandled.

¶ 16 Although we might agree with the *Shaffer* court's resolution of the case before it, it is interesting to note that just 12 days after *Shaffer* was decided, our supreme court decided *Martin v. Lancaster Battery Co., supra*, which allowed a common law claim of fraudulent misrepresentation to go forward against an employer for concealing and misleading the employee about his blood test results, thus leading to the aggravation of a work-related injury. The supreme court determined that there are certain types of employer conduct which were never intended to be covered by the Act:

> We do not find the reasoning of the courts refusing to permit common law actions under these circumstances to be persuasive. The employee herein has alleged fraudulent misrepresentation on the part of his employer as causing the delay which aggravated a work-related injury. He is not seeking compensation for the work-related injury itself in this action. Clearly, when the Legislature enacted the Workmen's Compensation Act in this Commonwealth, it could not have intended to insulate employers from liability for the type of flagrant misconduct at issue herein by limiting liability to the coverage provided by the Workmen's Compensation Act.

*Martin, supra* at 17–18, 606 A.2d at 447–448.

¶ 17 The *Martin* court focused on the nature of the injury arising from a claim for fraudulent misrepresentation as being beyond the scope of the Act. While joining the majority in *Martin*, Justice Zappala wrote separately to emphasize the distinction between the fraudulent misrepresentation claim and the original work-related injury that was compensable under the Act:

> In this appeal, the appellees are not seeking redress for injuries caused by exposure to lead and dust, for those injuries are covered by the Act. Instead, the appellees are seeking damages for the aggravation to the lead-related injuries due to the employer's failure to communicate the test results evincing Mr. Martin's actual condition. Because of this distinction, I agree with the majority and join in affirming the Order of the Superior Court.

*Id.* at 20, 606 A.2d at 449 (Zappala, J., concurring). Clearly, harm to reputation is even more attenuated from any injury contemplated by the Act than was the aggravation of the underlying injury in *Martin*.[6]

---

6. In *Fry v. Atlantic States Ins. Co.*, 700 A.2d 974, 976 (Pa.Super.1997), *appeal denied*, —— Pa. ——, 723 A.2d 1025 (1998), we noted that we have limited the holding of *Martin* to cases where the *employer* has committed fraud, resulting in an exacerbation of the employee's injury. *Fry* itself indicates that generally, in the absence of fraud, a claim of a mishandled workers' compensation case is inextricably linked to the underlying injury and is itself covered by the Act. *Id.* at 978. Because the instant case involves claims for harm to reputation and harm flowing from malicious abuse of process rather than the exacerbation of a physical, work-related injury, *Fry* is

¶ 18 We now turn to appellant's claim for malicious abuse of process. Our legislature has specifically enumerated six classes of compensable damages for this tort:

(1) The harm normally resulting from any arrest or imprisonment, or any dispossession or interference with the advantageous use of his land, chattels or other things, suffered by him during the course of the proceedings.

(2) The harm to his reputation by any defamatory matter alleged as the basis of the proceedings.

(3) The expense, including any reasonable attorney fees, that he has reasonably incurred in defending himself against the proceedings.

(4) Any specific pecuniary loss that has resulted from the proceedings.

(5) Any emotional distress that is caused by the proceedings.

(6) Punitive damages according to law in appropriate cases.

42 Pa.C.S.A. § 8353. As with defamation, the tort of malicious abuse of process is designed to vindicate, *inter alia*, harm to one's reputation and financial injury sustained as a result of the tort. This is an injury not contemplated under the Act. As such, we find that this claim is also not wholly barred by the exclusivity provisions of the Act.

¶ 19 The Bank argues, however, that this case presents the troubling question of double recovery. Indeed, appellant's claims for defamation and malicious abuse of process arise out of the same set of facts as her intentional and negligent infliction of emotional distress claims, which are barred by the exclusivity provisions of the Act. We agree that appellant's emotional distress claims fall within the purview of the Act, and that she is barred from recovering for this injury in a separate civil action. *See* 77 P.S. § 481(a). However, we do not believe that this fact should preclude her defamation and malicious abuse of process claims from going forward.

¶ 20 An injury to one's reputation cannot be defined solely in terms of the physical or emotional distress it causes to the injured party. Rather, "damages are assessed based upon the harm an individual experiences *to his reputation* within the geographic area [in which] the defamatory statement is communicated." *Graham v. Today's Spirit*, 503 Pa. 52, 58, 468 A.2d 454, 458 (1983) (emphasis added); *cf. Hull v. Curtis Publishing Co.*, 182 Pa.Super. 86, 125 A.2d 644, 650 n. 5 (1956) (damages for defamation "are for an injury to reputation," while damages for invasion of privacy "are for injury to one's own feelings"). Indeed, the injured party need not prove that she suffered any physical or emotional distress as a result of the defamation. *Battista*, 454 A.2d at 289 ("the gravamen of a defamation action is injury to reputation, irrespective of any physical or mental harm").

¶ 21 We find the reasoning of the Massachusetts Supreme Judicial Court in a similar case to be persuasive.

We recognize the conceptual problem inherent in the employee's including physical and mental injury as elements of damage in the defamation claim. However, we feel that to block the main thrust of this action because of peripheral items of damages, when a compensation claim could not purport to give relief for the main wrong of injury to reputation,[footnote 5] would be incongruous, and outside the obvious intent of the exclusiveness clause. *See* 2A A. Larson, Workmen's Compensation § 68.33 (1976 & Supp.1979).

We now turn to the employee's claim for malicious prosecution. The controlling argument must be that the essence of the tort is not physical or mental injury, but interference with the right to be free from unjustifiable litigation. *See* W. Prosser, Torts § 119, at 834 (4th ed.1971). Any physical or mental harm is incidental, and is not an indispensable ingredient of the tort. *See* Larson, *supra* at § 68.31. At this point the distinction between the em-

---

inapposite. We do not mean to imply that *Martin* is directly on-point; rather, we cite it for the proposition that not all injuries caused by em-

ployer misconduct are necessarily covered by the Act.

ployee's claims for malicious prosecution and defamation on the one hand, and intentional infliction of mental distress on the other hand, becomes clear: mental harm is the essence of the tort of intentional infliction of mental distress; it is an indispensable element of the tort. It matters not that all three claims are based upon the same alleged conduct of the defendant for 'the key to whether the Workmen's Compensation Act precludes a common law right of action lies in the nature of· the injury for which plaintiff makes claim, not the nature of the defendant's act which the plaintiff alleges to have been responsible for that injury.' *Gambrell v. Kansas City Chiefs Football Club, Inc.*, 562 S.W.2d 163, 168 (Mo.App.1978).

---

[footnote 5] Unlike damages in torts, compensation under the act 'is by way of relief from inability to earn, or for deprivation of support flowing from, wages theretofore received by the employee.' *Ahmed's Case*, 278 Mass. 180, 183, 179 N.E. 684 (1932). [other citations omitted.]

*Foley v. Polaroid Corp.*, 381 Mass. 545, 552, 413 N.E.2d 711, 715–716 (1980) (one footnote omitted). Like the malicious prosecution claim discussed by the *Foley* court, appellant's malicious abuse of process claim is intended to protect her interest in being free from unjustifiable legal proceedings. While appellant will be unable to recover in a common-law action for the emotional harm caused by this tort, she is free to seek compensation at common law for the other elements of damage arising from the tort. The same holds true for defamation.

¶ 22 Finding that appellant's claims for defamation and malicious abuse of process are not subject to the exclusivity provisions of the Act, we reverse and remand for further proceedings. The court's decision as to intentional and negligent infliction of emotional distress is affirmed. As a result of our decision today, we need not address whether the harm at issue arose in the course and scope of appellant's employment.

¶ 23 Affirmed in part and reversed in part. Remanded for further proceedings consistent with this opinion. Jurisdiction relinquished.

