J-A01041-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| EUGENE D.M. FREEMAN | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| INTER-MEDIA MARKETING, INC. | : | No. 2433 EDA 2017 |
| AND QUALFON | : | |

Appeal from the Order Entered July 11, 2017
In the Court of Common Pleas of Chester County
Civil Division at No(s): 2016-01533-TT

BEFORE: LAZARUS, J., OTT, J., and PLATT*, J.

MEMORANDUM BY OTT, J.:                    **FILED APRIL 04, 2018**

Eugene D.M. Freeman appeals from the order entered July 11, 2017, in the Chester County Court of Common Pleas, sustaining the preliminary objections of Inter-Media Marketing, Inc. ("IMM") and Qualfon, and dismissing Freeman's fourth amended complaint with prejudice. On appeal, Freeman argues the trial court erred in finding: (1) he did not have permission to add Qualfon as a defendant in his fourth amended complaint; and (2) he failed to plead the foreseeability requirements of his cause of action for negligent supervision. For the reasons below, we affirm in part, reverse in part, and remand for further proceedings.

The facts underlying this appeal are as follows. Freeman, a licensed insurance agent, was employed by IMM from August 1, 2015 through January

_____

* Retired Senior Judge assigned to the Superior Court.

31, 2016.  ***See*** Fourth Amended Complaint, 4/5/2017, at ¶¶ 1-2.  He worked at IMM's call center in West Chester, explaining the benefits of various health plans to existing and prospective clients of IMM's client, CareFirst Blue Cross Blue Shield.  ***See id.*** at ¶¶ 2-3.  Freeman alleges that on September 10, 2015, in the lunch room, Carol Stewart, the assistant to IMM's president, "called him a prostitute and said that [Freeman] was … sneak[ing] into the adjoining Executive Bathroom for homosexual prostitution."  ***Id.*** at ¶ 7.  Freeman further avers that the chief operations officer of the company overheard the comments and laughed at them.  ***See id.*** at ¶ 8.  He contends Stewart, as well as other employees, continued to repeat the defamatory comments until his employment contract ended.  ***See id.*** at ¶¶ 9-11.  Freeman also alleges he reported the "accusers" to his supervisor who failed to investigate or take any action to stop the "accusations of prostitution."  ***Id.*** at ¶ 12.

On February 23, 2016, Freeman filed his initial complaint against IMM, asserting IMM's vicarious liability for the purported defamatory statements made by its employees.  ***See generally*** Complaint, 2/23/2015.  IMM filed preliminary objections in the nature of a demurrer, contending, *inter alia*, Freeman failed to provide factual allegations that the employees' statements were "the 'kind and nature that the employee[s were] employed to perform or that the statements were made to 'serve' [IMM]."  Preliminary Objection to Plaintiff's Complaint, 4/22/2016, at ¶ 13.  In response, Freeman filed an amended complaint.  Several more rounds of preliminary objections/amended complaints followed, in which Freeman attempted to argue the statements

were made in service to IMM. *See* Amended Complaint, 5/1/2016, at ¶¶ 17, 20, Second Amended Complaint, 9/2/2016, at ¶¶ 18-20; Third Amended Complaint, 12/29/2016, at ¶¶ 15-17. Each time, the trial court sustained IMM's preliminary objections, and granted Freeman leave to file an amended complaint. *See* Order, 8/15/2016; Order, 12/12/2016. In its order sustaining the preliminary objections to Freeman's third amended complaint, the trial court again granted Freeman leave to file an amended complaint, but cautioned him that "this will be his last opportunity to replead." Order, 3/17/2017.

Thereafter, on April 5, 2017, Freeman filed a fourth amended complaint. Without leave of court, Freeman added two additional defendants, Qualfon and Paul Stantry, to the caption. Furthermore, Freeman also shifted the focus of his cause of action from vicarious liability to negligent supervision, averring he was "suing [IMM] … for acts committed [by its employees] outside their scope of employment while on [IMM's] premises during working hours, and [IMM] failed to prevent or stop their employees." Fourth Amended Complaint, 4/5/2017, at ¶ 6. He alleged he suffered injury to his "personal and business reputation" and sought $8 million in general and punitive damages. *Id.* at ¶ 15. Once again, IMM filed preliminary objections in the nature of a demurrer and asserted, *inter alia*, Freeman's claims might be barred by the Workers' Compensation Act.[1] *See* Preliminary Objection to Plaintiff's Fourth Amended

---

[1] *See* 77 P.S. § 1 *et seq*.

Complaint, 4/25/2017, at 36-54. On July 11, 2017, the trial court entered an order sustaining IMM's preliminary objections and dismissing Freeman's fourth amended complaint. In the order, the trial court noted Freeman added Qualfon as a defendant without first obtaining consent or leave of court.[2] *See id.* at n.1. This timely appeal followed.[3]

In his first issue on appeal, Freeman argues the trial court erred in finding he needed court permission to add Qualfon as a defendant. *See* Freeman's Brief at 12. He insists Pennsylvania Rule of Civil Procedure 1033(a) permits the correction of a party's name in an amendment, and once the court granted him leave to file a fourth amended complaint, "no further consent was necessary" to add Qualfon as a defendant. *Id.* Freeman explains:

> [IMM and Qualfon] had merged or integrated their management[], assets and operating systems as far back as February 1, 2016 and are currently operating under one management under the same roof … but at the time of the filing and service of the original complaint on February 23, 2016, [Freeman] did not know and so it became necessary to correct the [defendant's] name at the time [he] was granted leave to amend his complaint for the fourth time.

*Id.* at 13. In any event, Freeman asserts that even if he was not permitted to add a defendant, the proper remedy would be to enter a nonsuit in favor of

---

[2] The order did not mention Stantry.

[3] On July 31, 2017, the trial court ordered Freeman to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). Freeman complied with the court's directive and filed a concise statement on August 9, 2017.

- 4 -

Qualfon pursuant to Pa.R.C.P. 2232(d), and not dismiss the complaint. ***See***

***id.***

Pennsylvania Rule of Civil Procedure 1033 provides, in relevant part:

(a) A party, either by filed consent of the adverse party or by leave of court, may at any time change the form of action, add a person as a party, correct the name of a party, or otherwise amend the pleading.

Pa.R.C.P. No. 1033(a). Here, Freeman did not have Qualfon's consent to add

the company as an additional defendant to the action. However, he maintains

the trial court's March 17, 2017, order granting him permission to file a fourth

amended complaint, constituted "leave of court" pursuant to Rule 1033(a).

***Id.***

We review an order dismissing a complaint filed without leave of court

or consent of the adverse party for an abuse of discretion. ***See Paden v.***

***Baker Concrete Const., Inc.***, 658 A.2d 341, 343 (Pa. 1995). The ***Paden***

Court explained this standard of review as follows:

When the court has come to a conclusion by the exercise of its discretion, the party complaining of it on appeal has a heavy burden; it is not sufficient to persuade the appellate court that it might have reached a different conclusion if, in the first place, charged with the duty imposed on the court below; it is necessary to go further and show an abuse of the discretionary power. …

We emphasize that an abuse of discretion may not be found merely because the appellate court might have reached a different conclusion, but requires a showing of manifest unreasonableness, or partiality, prejudice, bias, or ill-will, or such lack of support as to be clearly erroneous.

***Id.***

In that case, the Supreme Court determined the trial court did not abuse its discretion when it dismissed the plaintiff's amended complaint filed without leave of court, which added a party defendant, even though "the improper joinder work[ed] no prejudice against the improperly joined defendant or the other parties to the action." *Id.* at 342. The *Paden* Court explained that although the trial court could have overlooked the procedural error pursuant to Pa.R.C.P. 126,[4] it was not required to do so. *Id.* at 344. Moreover, the Supreme Court found the trial court's ruling did not "show mainifest unreasonableness, or partiality, prejudice, bias, or ill-will, or such lack of support as to be clearly erroneous." *Id.*

Here, the trial court addressed this claim as follows:

> With regard to Qualfon, [Freeman] argues that Pa.R.C.P. 1033 permits an amendment to correct the name of a party, which is correct. In addition, according to [Freeman] our Order on Defendant's Preliminary Objections to [Freeman's] Third Amended Complaint gave him leave to amend the Complaint "and as as such no further consent was necessary to add Qualfon …" As we noted in the Order on appeal, [Freeman] neither requested nor was granted leave to add a new defendant. [Freeman] further argues the defendants "had already integrated their assets and operating systems and jointly managed as one and the same, under the same roof prior to [the date the original Complaint was filed], but

---

[4] Rule 126 provides:

> The rules shall be liberally construed to secure the just, speedy and inexpensive determination of every action or proceeding to which they are applicable. The court at every stage of any such action or proceeding may disregard any error or defect of procedure which does not affect the substantial rights of the parties.

Pa.R.C.P. No. 126.

[Freeman] was not aware of this fact." We initially note that none of this information was pled in the Fourth Amended Complaint. In any event, these averments are more properly set forth in a Motion for Leave to Amend. In summary, [Freeman] appears to argue that our Order granting him leave to file the Fourth Amended Complaint gave him "carte blanc" to make any amendments he saw fit, including adding a new defendant. We disagreed.

Trial Court Opinion, 9/13/2017, at 2.

We find no abuse of discretion in the trial court's ruling. Although the court gave Freeman permission to file a fourth amended complaint, that permission was in the context of the court's order sustaining the preliminary objections to his third amended complaint. Freeman never requested permission to add Qualfon as a defendant. Furthermore, as the trial court explained, Freeman simply added Qualfon to the caption of his complaint, and did not provide any explanation as why it was not named in the prior four complaints.[5] Accordingly, because we find no abuse of discretion on the part of the trial court, we affirm the dismissal of the complaint against Qualfon.[6]

_____

[5] Indeed, the only mention of Qualfon in the fourth amended complaint is in the second paragraph, which states:

[Freeman] worked at the Defendants' call center located in West Chester City, Pennsylvania from August 1, 2015 to January 31, 2016. Since then, InterMedia Marketing Solutions and Qualfon have integrated their assets and merged their operations.

Fourth Amended Complaint, 4/5/2017, at ¶ 2.

[6] We note neither the trial court, nor IMM, assert that IMM is not a proper party to this action, or that Freeman's improper joinder of Qualfon is grounds to dismiss the complaint against IMM.

IMM also points out Freeman attempted to join a third defendant, Paul Stantry, to the suit. **See** IMM's Brief at 14-15. The only mention of Stantry is in the caption of Freeman's fourth amended complaint, which lists the defendants as "Qualfon and InterMedia Marketing, Inc. Represented by Paul Stantry, President/CEO." Fourth Amended Complaint, 4/5/2017, at 1. For the reasons stated above, we find Freeman's belated attempt to join Stantry fails as well.

We will address Freeman's next two claims together. Freeman argues the trial court erred when it found he did not sufficiently plead the foreseeability requirements to support a claim of negligent supervision. **See** Freeman's Brief at 13-22. He also contends the court failed to consider the totality of the circumstances pled in the complaint before issuing its ruling. **See id.** at 23-26.

Our review of an order sustaining preliminary objections in the nature of a demurrer is well-established:

> A preliminary objection in the nature of a demurrer is properly granted where the contested pleading is legally insufficient. Preliminary objections in the nature of a demurrer require the court to resolve the issues solely on the basis of the pleadings; no testimony or other evidence outside of the complaint may be considered to dispose of the legal issues presented by the demurrer. **All material facts set forth in the pleading and all inferences reasonably deducible therefrom must be admitted as true.**
>
> In determining whether the trial court properly sustained preliminary objections, the appellate court must examine the averments in the complaint, together with the documents and exhibits attached thereto, in order to

evaluate the sufficiency of the facts averred. The impetus of our inquiry is to determine the legal sufficiency of the complaint and whether the pleading would permit recovery if ultimately proven. This Court will reverse the trial court's decision regarding preliminary objections only where there has been an error of law or abuse of discretion. When sustaining the trial court's ruling will result in the denial of claim or a dismissal of suit, preliminary objections will be sustained only where the case is free and clear of doubt.

Thus, the question presented by the demurrer is whether, on the facts averred, the law says with certainty that no recovery is possible. **Where a doubt exists as to whether a demurrer should be sustained, this doubt should be resolved in favor of overruling it.**

***Weiley v. Albert Einstein Medical Center***, 51 A.3d 202, 208–209 (Pa. Super. 2012) (internal citations and quotation marks omitted).

Where the complaint fails to set forth a valid cause of action, a preliminary objection in the nature of a demurrer is properly sustained. ***Lerner v. Lerner***, 954 A.2d 1229, 1234–35 (Pa. Super. 2008). The complaint need not identify specific legal theories, but it must provide essential facts to support the claim. ***See Krajsa v. Keypunch, Inc.***, 424 Pa. Super. 230, 622 A.2d 355, 357 (1993).

***412 N. Front St. Assocs., LP v. Spector Gadon & Rosen, P.C.***, 151 A.3d 646, 656 (Pa. Super. 2016) (emphasis supplied).

Here, Freeman's claim is based upon his assertion that IMM negligently supervised its employees, who made defamatory comments about him directly to him and to others, resulting in harm to his reputation. The tort of negligent supervision is derived from Section 317 of the Restatement (Second) of Torts, which provides, in relevant part:

§ 317 Duty of Master to Control Conduct of Servant

A master is under a duty to exercise reasonable care so to control his servant while acting outside the scope of his employment as

- 9 -

to prevent him from intentionally harming others or from so conducting himself as to create an unreasonable risk of bodily harm to them, if

(a) the servant

    (i) is upon the premises in possession of the master or upon which the servant is privileged to enter only as his servant, or

    (ii) is using a chattel of the master, and

(b) the master

    (i) knows or has reason to know that he has the ability to control his servant, and

    (ii) knows or should know of the necessity and opportunity for exercising such control.

Restatment (Second) Torts, § 317 (1965). As the Pennsylvania Supreme Court explained in *Dempsey v. Walso Bureau, Inc.*, 246 A.2d 418, 422 (Pa. 1968), "[t]o fasten liability on an employer under Section 317, it must be shown that the employer knew or, in the exercise of ordinary care, should have known of the necessity for exercising control of his employee."

In the present case, relying upon federal case law, the trial court found Freeman failed to satisfy the foreseeability requirements of his negligent supervision claim. The court opined:

A plaintiff must satisfy two separate foreseeability requirements: (1) the employer may be liable for negligence only if it knows or should have known of the necessity for exercising control over its employee; and (2) the harm that the improperly supervised employee caused to the plaintiff must also have been reasonably foreseeable. [*Belmont v. MB Inv. Partners, Inc.*, 708 F.3d 470 (3d Cir. 2013).] It appears that this requirement also implies knowledge of the need to control the employee prior to the incident taking place. *Gorwara v. AEL Insudstries, Inc.*, 1990 WL 44702 (ED. Pa. 1990), *citing Dempsey*[, *supra*]. In essence, [Freeman] argues that since some of the people who overheard

the remarks and failed to step in were managers or supervisors, the knowledge requirements were met. Again, we disagree[]. There is no indication that [IMM] knew before-hand that these employees would make the statements at issue.

Trial Court Opinion, 9/13/2017, at 3.

Our research has uncovered no Pennsylvania cases with facts similar to those presented herein, that is, where an employee alleges his employer is liable for harm to his reputation, because the employer negligently supervised a co-employee who defamed the employee in the workplace. **Compare Dempsey**, **supra**, 246 A.2d at 419 (plaintiff brought claim for negligent supervision against employer for injuries he sustained at work when co-employee "pulled [him] out of his chair, bent him over backwards and pinioned him, with his knee in [plaintiff's] back, for several minutes"); **R.A. ex rel. N.A. v. First Church of Christ**, 748 A.2d 692, 699 (Pa. Super. 2000) (plaintiff brought claim of negligent supervision against church after plaintiff was sexually abused by minister), *appeal denied*, 760 A.2d 855 (Pa. 2000); **Heller v. Patwil Homes, Inc.**, 713 A.2d 105, 109 (Pa. Super. 1998) (plaintiffs, who were victims of investment scam by sales manager brought claim of negligent supervision against model home company). However, while we recognize we may look to federal jurisprudence for its persuasive authority,[7] we find the

_____

[7] **See Century Indem. Co. v. OneBeacon Ins. Co.**, 173 A.3d 784, 792 n.14 (2017) (finding that although decisions of the federal courts and our sister states "are not binding on this Court, they may provide persuasive authority, particularly where, as here, neither this Court nor the Pennsylvania Supreme Court has considered this issue.").

- 11 -

cases upon which the trial court and IMM rely, in particular **Belmont**, **supra**, and **Gorwara**, **supra**, are distinguishable from the facts presented herein.

In **Belmont**, the employee of an investment firm operated a Ponzi scheme, disguised as a hedge fund, outside of the firm. He used both his position in the firm and the firm's resources to obtain and service his investors in the hedge fund. **See Belmont**, **supra**, 708 F.3d at 477-481. Thereafter, the plaintiffs/investors brought a negligent supervision claim against the corporate directors of the investment firm. The Third Circuit held the plaintiffs' claim against the directors, rather than the firm itself, was not viable. **See id.** at 490-491. Nevertheless, the Court found that even if the corporate directors could be liable as the employee's supervisors, the plaintiffs failed to establish the foreseeability elements of the claim. The Court opined:

> First, there is no reason that the [] Directors should have foreseen the need to supervise [the employee] with respect to his operation of [the hedge fund]. An employer is under "no duty ... to discover, at its peril, the fraudulent machinations in which [an employee] was involved outside the scope of his employment." **While some (and perhaps all) of the [] Directors were aware that [the employee] was running [] a hedge fund outside of [the firm], nothing in [the employee's] conduct … suggested that [he] would use [the hedge fund] to defraud investors.** Nor could the [] Directors have learned of the fraud without considerable investigation, given [the employee's] success at concealing the Ponzi-scheme nature of [the hedge fun] for almost ten years. For the same reasons, the Ponzi scheme and the harm that it would cause to [its] investors were not reasonably foreseeable by the [] Directors.

**Id.** at 491-492 (emphasis supplied).

In **Gorwara**, the plaintiff was terminated from his employment based upon, what he characterized as "defamatory, false and derogatory statements" about him made by another employee. **Gorwara**, **supra**, 1990 WL 44702, at *1. The plaintiff alleged the employee made these statements with the intent of inducing other employees to also make derogatory statements against him, which in fact did occur. **See id.** Moreover, he averred that "although [the employer] knew or should have known of [the employee's] 'tortious and malicious actions and defamatory remarks,' it took no action against [the employee.]" **Id.**

Subsequently, the plaintiff sued the employer based upon, *inter alia*, its negligent supervision of the employee. The federal district court, however, dismissed the claim, concluding the plaintiff's allegations were "insufficient as a matter of law." **Id.** at *5. The court opined:

> The complaint clearly alleges that [the employee] committed an intentional tort against plaintiff by making defamatory remarks about plaintiff to plaintiff's colleagues and subordinates at [the workplace] with the intent of inducing them to make false and derogatory remarks to [employer] and thereby cause plaintiff's discharge and that some of plaintiff's colleagues and subordinates in fact made such remarks. However, the complaint equivocates on whether [the employee] acted outside the scope of his employment, alleging that at all relevant times [the employee] "acted or failed to act for his own personal gain or for the benefit of [the employer]." Moreover, the complaint makes no allegation as to whether other [] employees who allegedly made defamatory remarks acted outside the scope of their employment. Additionally, the complaint fails to allege that the defamatory remarks made by [the employee] and other [] employees were foreseeable. **Only if [the employer] knew or should have known that [the employee] and other [] employees were or probably were going to make**

- 13 -

> **defamatory remarks about plaintiff before the remarks were made could their tortious acts have been foreseeable. Although the complaint alleges that AEL "had full knowledge of or should have known of the tortious and malicious actions and defamatory remarks by [the employee] against plaintiff", it contains no allegation as to when [the employer] should be deemed to have gained this knowledge or as to when, if ever, [the employer] knew or should have known of the defamatory remarks of other [] employees.** Accordingly, the claim for negligent supervision is insufficient as a matter of law and I will grant the motion to dismiss Count III.

***Id.*** (emphasis supplied and footnote omitted).

Both the trial court and IMM maintain Freeman, likewise, failed to plead facts sufficient to satisfy the foreseeability requirements of his claim. Relying on the language in ***Gorwara***, the trial court concluded Freeman did not allege IMM knew "before-hand" that its employees would make defamatory statements about him. Trial Court Opinion, 9/13/2017, at 3. ***See also*** IMM's Brief at 17. We would have no hesitation in affirming the ruling of the trial court if Freeman's claim was based **solely** on the defamatory statements made by Stewart on September 10, 2015. Indeed, the fourth amended complaint contains no allegations that IMM knew or should have known, at that time, that Stewart might make defamatory comments.

However, Freeman averred in his complaint that the accusations continued every day throughout his entire period of employment at IMM. Fourth Amended Complaint, 4/5/2017, at ¶¶ 9-10. Moreover, he specifically alleged:

> Plaintiff reported the above mentioned accusers to Mrs. Joanne Betz, Productions Manager, but she did nothing to investigate the

accusations. She also took no action to stop the relentless accusations of prostitution by the aforesaid supervisors and senior staff members.

*Id.* at ¶ 12.

Accepting Freeman's allegations as true, as we must pursuant to our standard of review,[8] we find that Freeman's complaint contains sufficient facts to satisfy the foreseeability requirements of his claim. Indeed, once he reported the defamatory comments to a supervisor, the employees' continued harassment was foreseeable to the employer. *See Mullen v. Topper's Salon and Health Spa, Inc.*, 99 F.Supp.2d 553, 557 (E.D. Pa. 2000) (denying employer's motion to dismiss claim of negligent supervision when plaintiff alleged she was harassed in the workplace; finding that once plaintiff informed her employer of the harassment, "its persistence became reasonably foreseeable."); *Gjeka v. Delaware County Community College*, 2013 WL 2257727, *13 (E.D. Pa. 2013) (dismissing negligent supervision claim against college for professor's purported sexual harassment when student/plaintiff "failed to plead any facts indicating that she, or any other student, complained about [professor's] action to an appropriate administrator"). Conversely, there were no allegations in either *Belmont* or *Gorwara* that (1) the plaintiff reported the fraud/harassment to the employer, (2) the employer took no action to investigate or stop the offensive behavior, and (3) the fraud/harassment persisted. Therefore, we conclude Freeman alleged sufficient facts in his complaint to establish IMM knew or should have known

---

[8] *See 412 N. Front St.*, *supra*, 151 A.3d at 656.

of the harassment he suffered in the workplace at the hands of its employees. Accordingly, we are constrained to reverse the trial court's order dismissing Freeman's fourth amended complaint against IMM.

We note IMM provides two alternative bases for affirming the trial court's order.[9]  First, it insists Freeman failed to plead the foreseeability of his damages.  **See** IMM's Brief at 17.  Specifically, IMM asserts the complaint "alleges no facts to suggest that IMM knew or should have known that Freeman would suffer $8 million in damages to his 'personal and business reputation' because of the alleged defamatory statements purportedly made by Freeman's fellow employees." **Id.** at 17-18.  In support, IMM refers to the language in **Belmont** that states "the harm that the improperly supervised employee caused to the third party must also have been reasonably foreseeable."  **Belmont**, **supra**, 708 F.3d at 491.  In our view, however, assuming Freeman can establish IMM knew its employees were making defamatory comments about him, it is reasonably foreseeable that such comments would damage his reputation.  IMM provides no support for its contention that the amount of damages sought must also have been reasonably foreseeable.

_____

[9] We may affirm a trial court's ruling on any basis so long as the result is correct.  **Greenberg v. McGraw**, 161 A.3d 976, 989 n.12 (Pa. Super. 2017).

Second, IMM argues the trial court properly dismissed the complaint because Freeman's claim is barred by the Workers' Compensation Act.[10]  **See** 77 P.S. § 1 *et seq*.  It insists the Act provides an exclusive remedy for an employee that suffers a work-related injury.  **See** IMM's Brief at 18, *citing* 77 P.S. § 481(a) ("The liability of an employer under this act shall be exclusive and in place of any and all other liability to such employees.").  However, the term "injury" is not defined in the Act.  **See Pawlosky v. Workmen's Compensation Appeal Board**, 525 A.2d 1204, 1209 (Pa. 1987).  Moreover, this Court has held that a defamation claim lodged against an employer, seeking redress for injuries solely to the employee's reputation, is not barred by the exclusivity provisions of the Workers' Compensation Act.  **See Urban v. Dollar Bank**, 725 A.2d 815 (Pa. Super. 1999), *appeal granted*, 742 A.2d 172 (Pa. 1999).  Accordingly, we decline to affirm the trial court's dismissal of Freeman's complaint on either alternative basis suggested by IMM.

Therefore, we affirm the ruling of the trial court to the extent that Qualfon and Paul Stantry are dismissed from the action.  However, we reverse the court's dismissal of the negligent supervision claim against IMM.

Order affirmed in part, and reversed in part.  Case remanded for further proceedings.  Jurisdiction relinquished.

---

[10] The trial court did not directly address this allegation, but rather stated the complaint "might be barred by the Workers' Compensation Act."  Trial Court Opinion, 9/13/2017, at 3.

- 17 -

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 4/4/18